IN THE UNITED STATES COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL S. ESCOBEDO )
5117 Bandera Creek Trail )
Austin, TX 78735 )
 )
 )
    *Plaintiff,* )
 )
v. ) Civil Action No.
 )
THE HONORABLE PETE GEREN )
Secretary of the Army )
120 Army Pentagon )
Washington, DC 20310 )
 )
    *Defendant.* )
    )

## COMPLAINT

**(APA Review of Decision of the Army Board for Correction of Military Records)**

### JURISDICTION AND VENUE

1. This action seeks review of the decision of the Army Board for Correction of Military Records (ABCMR) dated October 17, 2005. That decision is a final agency decision under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.*

2. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Plaintiff raises claims under the United States Constitution, federal statutes, and military regulations.

3. The Acts of Congress upon which federal question jurisdiction rests are 10 U.S.C. § 1552, which provides for a service member to apply to the ABCMR to correct errors and injustices, and the APA, 5 U.S.C. § 701 *et seq.*, which permits a federal court to review and reverse the decision of a Board for Correction of Military Records that is arbitrary, capricious, unsupported by evidence or otherwise contrary to law.

4. This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702.

5. Venue lies in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1402(a)(2).

6. By filing this complaint in this Court, Plaintiff expressly waives any right or entitlement to recover monetary damages greater than $10,000 in this action.

## PARTIES

7. Plaintiff Michael S. Escobedo is a United States citizen, a physician, and a former U.S. Army Captain and medical officer, who resides at the address stated in the caption.

8. Defendant, the Honorable Pete Geren, is the Secretary of the Army and is the named defendant in his official capacity only as the head of the Department of the Army. 10 U.S.C. § 3013. Because he is the officer with final authority for correction of records within the Department of the Army, he is the proper defendant for a cause of action under the APA.

## STATUTE OF LIMITATIONS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff was discharged from the Army effective January 13, 1998.

10. In 2006, Plaintiff submitted an application for the correction of records to the ABCMR.

11. On March 19, 2007, the ABCMR issued a final decision denying Plaintiff's application.

12. As this Complaint is filed within six years of the ABCMR's final decision denying Plaintiff's application, it is timely filed. 28 U.S.C. § 2401(a); *Lebrun v. England*, 212 F.Supp.2d 5, 12-13 (D.D.C. 2002).

13. Plaintiff has exhausted all administrative remedies available to him.

## FACTS

14. On March 8, 2007, the ABCMR considered Plaintiff's application to correct his military

records, and on March 19, 2007, the ABCMR issued a final decision denying Plaintiff's application. This action arises because the ABCMR, acting for the defendant, has failed to correct errors and remove injustices that followed from the failure by the Department of the Army to comply with applicable statutes and regulations in its dealings with Plaintiff.

**Plaintiff's Military Service**

15. Plaintiff was appointed a captain in the Medical Corps of the United States Army Reserve (USAR) on May 20, 1995, and entered active duty in that status on July 7, 1996.

16. At the time of his discharge on January 13, 1998, Plaintiff had completed 1 year 6 months 7 days of active military service in that period; with his prior enlisted service in the Army Reserves, he had a total of 3 years 2 months 28 days of military service.

17. Plaintiff participated in and completed seven military specialty schools in addition to maintaining required flight hours, clinical duties, and unit duty; these schools included Basic Flight Surgeon School Course, Combat Care Casualty Course, Army Medical Defense Against Biological Warfare Course, Medical Management of Chemical Casualties Course, Pediatric Advanced Life Support Training Course, Advanced Trauma Life Support Training Course, and Advanced Cardiac Life Support Course where he was awarded instructor status after obtaining a perfect score.

18. Plaintiff's excellent Army service is evidenced by his awards, which include the Army Achievement Medal, the National Defense Service Medal, the Army Service Ribbon, and the Flight Surgeon Badge.

**The Alleged Incident and Aftermath**

19. In June 1996, after completing medical school and his internship, Plaintiff attended the U.S. Army Flight Surgeon primary course at Fort Rucker, Alabama; prior to his attendance, a private

contractor Lone Star Van Lines (Lone Star) packed and stored his household goods, including his boat, pursuant to government contract.

20. In August 1996, Plaintiff reported as the Flight Surgeon for the 4th Aviation Brigade, Headquarters Company, Fort Hood, Texas.

21. On August 23, 1996, Plaintiff drove to the Lone Star warehouse facility in Fort Worth, Texas to retrieve his boat.

22. Plaintiff met Keith Young at the warehouse facility; at the direction of Lone Star personnel, Plaintiff and Mr. Young backed Plaintiff's vehicle up an inclined dock and then entered the warehouse where the dock foreman Dwight Tatum led them to Plaintiff's boat.

23. They found Plaintiff's boat abutting a concrete wall; Plaintiff documented damage to the boat's propeller, wheel castor and pin, including a bent propeller and shattered taillights on the boat.

24. These damages to Plaintiff's boat, and the fact that these damages did not exist prior to the boat being stored by Lone Star, were corroborated by Mr. Young's subsequent sworn statement, and also by the initial inspection report completed by Lone Star employees when they inspected the condition of Plaintiff's boat upon initially receiving it for storage.

25. Mr. Tatum asked Plaintiff to pull his vehicle up an incline so he could attach the boat to the ball hitch; after he signaled Plaintiff and Mr. Young to pull forward, the boat came off the ball hitch and slammed into the back of Plaintiff's vehicle. Mr. Young's subsequent sworn statement corroborated these events.

26. The impact caused damage to Plaintiff's vehicle, but there appeared to be no further damage to the boat because Mr. Tatum had attached the safety chains correctly.

27. Immediately after the incident, Plaintiff asked a Lone Star employee for advice about

documenting the incident; she instructed him to call the Naval Air Station JRB in Fort Worth, where an individual at the personal property shipping office advised him to enter the damages on the form provided by Lone Star upon which he had already noted the initial physical damage to the boat.

28. After documenting the damage, Plaintiff secured the boat to the hitch himself to avoid further damage and then he and Mr. Young left.

29. After receiving his household goods, Plaintiff submitted a damage claim to the 3 Corps claims office; Plaintiff also submitted a letter from Mr. Young substantiating the events of August 23, 1996.

30. Plaintiff consulted with Captain Anissa Parekh in the claims office, who eventually informed Plaintiff that the damages to his household goods and boat would be covered, but that he would have to file a claim with the carrier for damages sustained to his vehicle; she referred Plaintiff to the office of the Judge Advocate General (JAG) at the 1st Cavalry, where Plaintiff received assistance in writing a letter requesting information on Lone Star's insurance company in order to make a claim.

31. Lone Star's vice president Shelby Thigpen stated in correspondence that Lone Star had caused no damage to Plaintiff's boat; that a Lone Star employee heard Plaintiff state he had bent the propeller on rocks but planned to make a claim to get the Army to pay for it; that the boat was hooked up to the hitch by Plaintiff and Mr. Young rather than by any Lone Star employee; and finally, that Lone Star denied responsibility for any damages to Plaintiff's boat or vehicle.

32. On August 2, 1997, a Criminal Investigation Division (CID) Report of Investigation (ROI) concluded that probable cause existed to believe Plaintiff had committed the offenses of fraud, attempted larceny of government funds, and false official statement with regard to the events of

August 23, 1996 and his subsequent claim for damages.

33. On or about February 26, 1997, Plaintiff was summoned to the CID office where, after acknowledging that he had filed a claim for household goods and owned a boat, Plaintiff was read his rights, fingerprinted, photographed, and informed that three charges had been filed against him by the claims office.

34. CID personnel took statements of three Lone Star personnel: Mr. Tatum, Ms. Thigpen, and Barbara Turnham.

35. Mr. Tatum and Ms. Thigpen subsequently testified by phone at an Article 32 hearing conducted June 18, 1997; Ms. Turnham, the employee who allegedly had heard Plaintiff make the incriminating statements, did not testify as she was no longer employed by Lone Star and her whereabouts were unknown.

36. The statements and testimony of Mr. Tatum and Ms. Thigpen, the claim response letter from Ms. Thigpen, and the statement of Ms. Turnham, were contradictory on key points relating to the location of Plaintiff's boat in storage, observable damage to the boat and propeller when Plaintiff came to pick up his boat, who was present while the hitch was being secured, and who allegedly heard Plaintiff stating his intent to file a fraudulent claim.

37. The statements and testimony of Mr. Tatum and Ms. Thigpen, the claim response letter from Ms. Thigpen, and the statement of Ms. Turnham, were also contradicted by the initial inspection report completed by Lone Star employees when they inspected the condition of Plaintiff's boat upon initially receiving it for storage.

38. That initial inspection report completed by Lone Star employees noted only that the propeller was "rubbed and scratched," a common description for a used propeller; that initial

6

inspection report indicated that the boat propeller was not bent, nor did it document any of the other damages identified by Plaintiff and Mr. Young when they arrived to get the boat.

39. Captain Parekh testified at the Article 32 hearing that most carriers deny causing any damage to property, that such denial is not uncommon, and that if a carrier like Lone Star admits damage then the government demands payment from the carrier.

40. If Lone Star or any of its employees admitted causing the damages to Plaintiff's boat and vehicle, Lone Star would be liable for such damages and at risk for losing future government contracts and such employee would be at risk of being fired.

41. The only independent witness to the events at the Lone Star warehouse facility on August 23, 1996, was Mr. Young; his testimony was not considered by CID or at the Article 32 hearing.

**Plaintiff's Discharge**

42. During most of the time that Plaintiff was at Fort Hood, he was assigned to a troop medical clinic (TMC) under the direction of Major Jeffrey Saunders, who was extremely antagonistic toward Plaintiff.

43. As Major Saunders' antagonism toward Plaintiff escalated, it manifested in numerous ways, including in his insistence on treating Plaintiff more harshly than other personnel by refusing to release Plaintiff to attend unit meetings and functions, and by charging Plaintiff with insubordination following an incident where Major Saunders refused to allow Plaintiff to provide medical care to some of the soldiers from his unit who were at the TMC.

44. Court-martial charges were eventually preferred against Plaintiff stemming from his interpersonal conflicts with Major Saunders and from his claim for property damages to his boat and vehicle.

45. Upon the advice of counsel, Plaintiff submitted a request for discharge in lieu of court-martial in order to avoid the loss of his medical license.

46. Plaintiff's request for discharge was eventually approved, and he was discharged from the Army Under Other Than Honorable Conditions effective January 13, 1998.

## Army Discharge Review Board

47. On September 15, 2004, Plaintiff submitted an application to the Army Discharge Review Board (ADRB) requesting that his discharge characterization be upgraded to Honorable.

48. On October 21, 2005, the ADRB unanimously granted Plaintiff's request to upgrade his discharge characterization to Honorable; the ADRB also concluded in a majority decision that the specified reason for discharge should be changed from In Lieu of Trial by Court-Martial to Miscellaneous/General Reasons.

49. In its findings and review of Plaintiff's record and service history, the ADRB found that no nonjudicial punishment had occurred.

50. On December 1, 2005, the Secretary of the Army adopted the findings of the ADRB.

## Army Criminal Investigation Command

51. On or about January 11, 2006, Plaintiff submitted a petition to the U.S. Army Criminal Investigation Command (USACIDC) requesting amendment of an erroneous CID report in which he was titled for the offenses of Larceny of Government Funds, False Official Statement, and Submitting a False Claim.

52. On May 8, 2006, USACIDC denied Plaintiff's petition.

53. Despite the evidence Plaintiff submitted to USACIDC that his discharge characterization had been upgraded by the ADRB and the Secretary of the Army to Honorable and the reasons for

his discharge had been revised to Miscellaneous/General, USACIDC nevertheless stated in its May 8, 2006 denial that because USACIDC's own records reflected that Plaintiff was discharged from the Army under other than honorable conditions under Chapter 10 in lieu of court martial that retention of this criminal history data in the National Crime Information Center (NCIC) therefore conformed to Department of Defense policy and hence Plaintiff's name would remain in the NCIC.

### Application to the Army Board for Correction of Military Records

54. In 2006, Plaintiff submitted an application to the ABCMR for the correction of his military records, requesting that his name be removed from the titling block of the CID report in which he was titled for the offenses of Larceny of Government Funds, False Official Statement, and Submitting a False Claim, and requesting that the correction then be relayed to the NCIC to remove his name from NCIC records as well.

55. In his application, Plaintiff identified prejudicial substantive and procedural errors and injustices that comprised the basis for his application for correction of records, including but not limited to: that Plaintiff's discharge characterization had been upgraded to Honorable and the reason for his discharge had been changed to Miscellaneous/General Reasons and yet USACIDC refused to grant his request on the grounds that USACIDC's own records reflected that Plaintiff was discharged from the Army under other than honorable conditions under Chapter 10 in lieu of court martial; and that the record did not support the conclusion in the CID ROI that there was sufficient evidence to believe that Plaintiff committed any offense, let alone multiple offenses.

56. On March 19, 2007, Plaintiff was advised by the ABCMR that it had considered and denied his application on March 8, 2007, Plaintiff had presented insufficient relevant evidence to demonstrate the existence of error or injustice, noting that titling only requires credible information

that the only way to administratively remove a titling action from the Defense Central Investigations Index (DCII) is to show either mistaken identity or a complete lack of credible evidence to dispute the initial titling determination.

57. The ABCMR erroneously concluded that Plaintiff had been subject to nonjudicial punishment, contrary to clear evidence in the record including the findings and conclusions of the ADRB.

## STATUTORY AND REGULATORY FRAMEWORK

58. Applicable regulations that govern the removal of derogatory information from the National Criminal Information Center (NCIC) include but are not limited to Army Regulation (Army Reg.) 195-2, "Criminal Investigation Activities;" Department of Defense Instruction (DoDI) 5505.07; and Army Criminal Investigation (CID) Regulation 195-1.

59. 10 U.S.C. § 1552 provides for the correction of an error or injustice in the record of a member of the military. Upon timely application and consideration, the statute provides:

> The Secretary of a military department may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the Secretary acting through boards of civilians of the executive part of the military department.

10 U.S.C. § 1552(a)(1).

61. The ABCMR is established by the Secretary of the Army and consists of civilians of the executive part of the Department of the Army who are appointed by the Secretary of the Army; three members constitute a quorum. 32 C.F.R. § 581.3. The ABCMR will review all matters that are properly before it to determine the existence of error or injustice. *Id.*

62. The ABCMR has "an abiding moral sanction to determine, insofar as possible, the true

nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Yee v. United States*, 512 F.2d 1383, 1387-88 (Ct. Cl. 1975) (citations omitted).

63. The ABCMR has significant power to grant relief, and may, for example order reinstatement and back pay. *See, e.g., Chappell v. Wallace*, 462 U.S. 296, 303 (1983) (Board is empowered under 10 U.S.C. § 1552 to order retroactive pay and promotion); 10 U.S.C. § 1552 (may pay claims for lost pay, allowances, etc., as the result of a record correction).

## LEGAL CLAIMS

### Count 1

**The ABCMR's decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise contrary to law.**

64. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

65. The ABCMR, acting for the defendant, by refusing to provide full and complete relief to Plaintiff in its decision dated March 19, 2007, violated Plaintiff's right pursuant to 10 U.S.C. § 1552 to have his military records corrected to adequately and fully correct an error or remove an injustice. Specifically, by failing to remove derogatory information from the NCIC and failing to provide the other records corrections requested by Plaintiff, the decision of the ABCMR unlawfully withheld relief to which Plaintiff was legally entitled.

66. The ABCMR's decision does not address in any substantive manner Plaintiff's specific contentions, including: that the statements from Lone Star contradicted each other, contradicted Lone Star's initial inspection report, and directly contradicted Mr. Young's testimony; that Plaintiff now has a permanent police record for three crimes based on a single disputed transaction with Lone

Star; that despite the fact that the ADRB determined that Plaintiff's discharge characterization and reasons be changed to an Honorable Discharge for Miscellaneous/General Reasons, that Plaintiff, because of NCIC's records, continues to be forced to explain the circumstances of the Lone Star incident in numerous recurring situations such as whenever he renews his medical license, fills out a credit card application, or obtains insurance.

67. The failure to address any of these points, which were seemingly meritorious arguments raised by Plaintiff, was arbitrary and capricious. *Mudd v. Caldera*, 26 F.Supp.2d 113, 120-21 (D.D.C. 1998) (citing with approval *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997), and *Neal v. Secretary of Navy*, 639 F.2d 1029, 1042 n.13 (3d Cir. 1981).

68. Plaintiff was titled in the ROI based on witness statements that were biased and contradicted, with no crime or guilt was ever proved, and yet the ROI nevertheless continues to be severely detrimental to Plaintiff; those facts, together with the ADRB's finding that Plaintiff's discharge should be upgraded to Honorable and that the reasons for discharge should be changed to Miscellaneous/General, demonstrate that the current situation is unjust, and yet the ABCMR failed to correct this injustice.

69. The ABCMR is obligated to properly determine the nature of any error or injustice, and also to take such corrective action as is necessary to provide full and effective relief. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004); *Yee v. United States*, 512 F.2d 1383, 1387 (Ct. Cl. 1975).

70. The ABCMR failed to perform its duties under 10 U.S.C. § 1552 and 32 C.F.R. § 581.3.

71. The ABCMR decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise contrary to law, all within the authority of this reviewing Court

to remedy under the APA, 5 U.S.C. § 706.

### Count II

**The ABCMR's action was contrary to applicable regulations and violated Plaintiff's constitutional right to due process of law.**

72. The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

73. The ABCMR's decision in this matter was contrary to applicable regulations because Army directives and regulations, including Army Reg. 195-2 ¶ 4-4.b., were violated by the ABCMR's insistence that the standard applicable to Plaintiff's request to amend the ROI was the credible evidence standard, which directly contradicts the Army's own governing regulation.

74. The ABCMR's decision in this matter was contrary to applicable regulations because military directives and regulations, including DoDI 5505.7 ¶¶ 6.11.2 and 6.11.3, were violated by the Army in USACIDC's insufficient response to Plaintiff's request to amend the ROI.

75. The ABCMR's decision in this matter was contrary to applicable regulations because by statute and regulation, including 10 U.S.C. § 1552 and 32 C.F.R. § 581.3, it is the ABCMR's duty to correct a service member's records, and yet despite the fact that USACIDC stated that its records relating to Plaintiff conflicted with his revised record of discharge characterization and discharge reasons as ordered by the ADRB, the ABCMR failed to order the USACIDC to correct its records to reflect the decision of the ADRB.

76. The ABCMR failed to perform its duties under 10 U.S.C. § 1552, 32 C.F.R. § 581.3, and Army Reg. 195-2.

77. Violations of Army regulations constitute a violation of the due process provisions of the Fifth Amendment. See, e.g., Antonuk v. United States, 445 F.2d 592, 595 (6th Cir. 1971) ("violation by the military of its own regulations constitutes a violation of an individual's right to due process of law").

78. The military's failure to adhere to its own regulations violated Plaintiff's right to due process of law under 10 U.S.C. § 1552, 32 C.F.R. § 581.3, Army Reg. 195-2, and the Fifth Amendment.

Case 1:08-cv-00575-RMC   Document 1   Filed 04/02/2008   Page 15 of 15

**PRAYER FOR RELIEF**

79. WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

(A) Set aside the decision of the ABCMR;

(B) Compel the defendant to:

(1) Correct Plaintiff's military records by deleting his name from the title block of the ROI, by then distributing copies of the amended ROI to all organizations that had received the original (including but not limited to federal and state law enforcement agencies and criminal history databases such as the FBI and NCIC), and by removing his name and reference from the DCII and the Army Crime Records Center;

(2) Order that any reference to the ROI be deleted from the Army's records and be expunged from Plaintiff's official military personnel file;

(C) Award Plaintiff attorneys' fees and costs expended in pursuit of this claim, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(D) Grant any other relief that the Court deems just and proper to provide complete and full relief to Plaintiff.

Respectfully submitted,

David P. Sheldon (DC Bar # 446039)
Law Offices of David P. Sheldon, P.L.L.C.
512 8th Street, S.E.
Washington, DC  20003
Tel: 202.546.9575
Fax: 202.546.0135

Attorney for Plaintiff

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

### I (a) PLAINTIFFS

Michael S. Escobedo
5117 Bandera Creek Trail
Austin, TX 78735

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Travis County, TX
(EXCEPT IN U.S. PLAINTIFF CASES)

### DEFENDANTS

The Honorable Pete Geren
Secretary of the Army
120 Army Pentagon
Washington, DC 20310

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

### (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

David P. Sheldon
Law Offices of David P. Sheldon, PLLC
512 8th Street, SE
Washington, DC 20003

### ATTORNEYS (IF KNOWN)

Jeffrey Taylor
United States Attorney for the District of Columbia
555 4th Street, NW
Washington, DC 20001

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
● 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

● **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

- ○ **G. Habeas Corpus/ 2255**
  - ☐ 530 Habeas Corpus-General
  - ☐ 510 Motion/Vacate Sentence

- ○ **H. Employment Discrimination**
  - ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)

  *(If pro se, select this deck)*

- ○ **I. FOIA/PRIVACY ACT**
  - ☐ 895 Freedom of Information Act
  - ☐ 890 Other Statutory Actions (if Privacy Act)

  *(If pro se, select this deck)*

- ○ **J. Student Loan**
  - ☐ 152 Recovery of Defaulted Student Loans (excluding veterans)

- ○ **K. Labor/ERISA (non-employment)**
  - ☐ 710 Fair Labor Standards Act
  - ☐ 720 Labor/Mgmt. Relations
  - ☐ 730 Labor/Mgmt. Reporting & Disclosure Act
  - ☐ 740 Labor Railway Act
  - ☐ 790 Other Labor Litigation
  - ☐ 791 Empl. Ret. Inc. Security Act

- ○ **L. Other Civil Rights (non-employment)**
  - ☐ 441 Voting (if not Voting Rights Act)
  - ☐ 443 Housing/Accommodations
  - ☐ 444 Welfare
  - ☐ 440 Other Civil Rights
  - ☐ 445 American w/Disabilities-Employment
  - ☐ 446 Americans w/Disabilities-Other

- ○ **M. Contract**
  - ☐ 110 Insurance
  - ☐ 120 Marine
  - ☐ 130 Miller Act
  - ☐ 140 Negotiable Instrument
  - ☐ 150 Recovery of Overpayment & Enforcement of Judgment
  - ☐ 153 Recovery of Overpayment of Veteran's Benefits
  - ☐ 160 Stockholder's Suits
  - ☐ 190 Other Contracts
  - ☐ 195 Contract Product Liability
  - ☐ 196 Franchise

- ○ **N. Three-Judge Court**
  - ☐ 441 Civil Rights-Voting (if Voting Rights Act)

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Administrative Procedure Act Review of a decision of the Army Board for Correction of Military Records

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  1 April 2008     SIGNATURE OF ATTORNEY OF RECORD  [signature]

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.