UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MICHAEL S. ESCOBEDO** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 08-00575 (RMC)** |
| | ) | |
| **THE HONORABLE PETE GEREN** | ) | |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Pete Geren,[1] Secretary of the Army, in his official capacity, through the undersigned counsel, respectfully moves for summary judgment on Plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure because there are no genuine issues as to any material fact and Defendant is entitled to judgment as a matter of law.  In support of this motion, Defendant respectfully submits the attached memorandum of points and authorities, a statement of material facts not in genuine dispute, a proposed order, and an administrative record.

Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

---

[1]  Pete Geren replaced Francis J. Harvey as the Secretary of the Army on July 16, 2007.

                    _____/s_____

LANNY J. ACOSTA
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895


Of Counsel:
Captain Patrick B. Grant
U.S. Army Litigation Division
Arlington, VA 22203

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MICHAEL S. ESCOBEDO,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 08-00575 (RMC)** |
| | ) |
| **THE HONORABLE PETE GEREN** | ) |
| **Secretary of the Army,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Pete Geren, Secretary of the Army, in his official capacity and through the

undersigned counsel, respectfully moves to dismiss Plaintiff's Complaint pursuant to Rule 56 of

the Federal Rules of Civil Procedure because there are no genuine issues as to any material fact

and Defendant is entitled to judgment as a matter of law.

## I.  INTRODUCTION

Plaintiff is a former Army Captain who served on active duty from July 1996 through

January 1998.  (Compl. ¶¶ 7, 9, 15, and 16.)  While on active duty, Plaintiff filed a property damage

claim with the III Corps Claims Office asserting that Lone Star Van Company ("Lone Star") caused

damage to Plaintiff's boat and vehicle.  (Compl. ¶¶ 29 and 30.)  Plaintiff claimed that Lone Star bent

the boat's propeller, wheel castor and pin, and shattered the boat's taillights.  (Compl. ¶ 23.)

Plaintiff further claimed that a Lone Star employee improperly attached the boat to the ball hitch [on

Plaintiff's vehicle] causing the boat to come off the hitch and damage Plaintiff's vehicle.  (Compl.

¶¶ 25 and 26.)

Lone Star sent correspondence to the claims office denying responsibility for the property

damage because a Lone Star employee heard Plaintiff state that he had bent the propeller on rocks,

but he planned to make the Army to pay for it, and that Plaintiff, rather than Lone Star, hooked the boat up to his vehicle. (Compl. ¶ 31.)

On August 2, 1997, a Criminal Investigation Division ("CID") Report of Investigation ("ROI") concluded that probable cause existed to believe that Plaintiff committed the offenses of fraud, attempted larceny of government funds, and false official statement when he submitted a fraudulent claims packet for $724.73, alleging his boat was damaged in shipping. (Compl. ¶ 32 and AR 16.) The ROI includes a narrative of three witness interviews. (AR 17-8.) The narrative states that three of the witnesses assert that Plaintiff attached the boat to his vehicle and two witnesses stated that they heard Plaintiff admit that he previously damaged the propeller going over rocks at a lake, but that he was going to file a claim to get the Army to pay for the damage. (AR 17-8.)

On May 15, 1997, a Judge Advocate opined that there was probable cause to believe that Plaintiff committed the offenses of fraud, attempted larceny of government funds, and false official statement. (AR 19.) The Army preferred court-martial charges against Plaintiff partly based upon Plaintiff's property damage claim. (Compl. ¶ 44 and AR 339-41.) Plaintiff submitted a request for discharge in lieu of trial by general court-martial. (Compl. ¶ 45 and AR 99-100.) Pursuant to Army Regulation ("Army Reg.") 600-8-24, ¶ 3-13, the Army discharged Plaintiff in lieu of trial by general court-martial under other than honorable conditions. (Compl. ¶ 46 and AR 31 and 91.) Army Reg. 600-8-24, Officer Transfer and Discharges, ¶ 3-13 (July 21, 1995).

On September 15, 2004, Plaintiff submitted an application to the Army Discharge Review Board ("ADRB")[2] asking the board to upgrade his discharge characterization to honorable. (Compl.

---

[2]  The ADRB is empowered to review the discharge or dismissal of any former member of an armed force. 10 U.S.C. § 1553(a); 32 C.F.R. § 581.2; Army Reg. 15-180, Army Discharge Review Board (March 20, 1998).

¶ 47 and AR 73-84.)  The ADRB granted Plaintiff's request reasoning that "[t]he board does not condone the applicant's misconduct; however, it determined that the discharge is inequitable.  The applicant's misconduct was mitigated by service of sufficient length and merit to warrant an upgrade of the discharge being reviewed."  (Compl. ¶ 48 and AR 69.)

On January 11, 2006, Plaintiff applied to the U.S. Army Criminal Investigation Command (USACIDC) for amendment of the ROI.  (Compl. ¶ 51 and AR 36-58.)   On May 8, 2006, USACIDC denied Plaintiff's request because the Army discharged Plaintiff under other than honorable conditions in lieu of trial by general court-martial.  (Compl. ¶ 53 and AR 10.)

In 2006, Plaintiff applied to the Army Board for Correction of Military Records ("ABCMR")[3] to remove his name from the titling block of the ROI.  (Compl. ¶ 54 and AR 11-35). The ABCMR denied the application because Plaintiff failed to show that there was a mistaken identity or a complete lack of credible evidence to dispute the initial titling determination.  (Compl. ¶ 56 and AR 8.)

Plaintiff now challenges the ABCMR's denial of his application by claiming that the ABCMR failed to address Plaintiff's arguments and that the ABCMR applied the incorrect "credible evidence standard" to Plaintiff's request.  (Compl. ¶¶ 67 and 73.)  Plaintiff asks this Court to compel Defendant to delete Plaintiff's name from the title block of the ROI, distribute copies of the amended ROI to all organizations that received the original ROI, and remove his name from the Defense Clearance and Investigations Index ("DCII").  (Compl. ¶ 79.)

---

[3]  The ABCMR is a board comprised of high-ranking civilian employees of the Department of the Army.  Title 10 U.S.C. § 1552 provides that the Secretary of the Army, acting through the ABCMR, may correct any record when he considers it necessary to correct an error or remove an injustice.  The policies, procedures, and governing rules of the ABCMR are at 32 C.F.R. § 581.3.

## II.  SUMMARY OF THE ARGUMENT

The ABCMR's decision is not arbitrary and capricious, contrary to law, or unsupported by substantial evidence.  The ABCMR correctly determined that the only way to remove a titling action from the ROI and DCII is to show either mistaken identity or a complete lack of credible evidence to dispute the initial titling determination. The ABCMR denied Plaintiff's application because the CID investigation provided a sufficient legal basis for CID to title Plaintiff for fraud, attempted larceny of government funds, and false official statement.  The ABCMR considered Plaintiff's arguments and found that Plaintiff failed to satisfy the standard for removal of his name from the ROI and DCII.  The ABCMR's decision was neither arbitrary or capricious because it articulated a rational connection between the facts found and the choice made. Therefore, there is no genuine issue as to any material fact and the Defendant should be entitled to judgment as a matter of law.

## III.  STATEMENT OF THE FACTS

Defendant respectfully refers the Court to Defendant's Statement of Material Facts to Which There is No Genuine Dispute filed simultaneously herewith.

## IV.  ARGUMENT

**A.  The Court Should Grant the Government's Motion for Summary Judgment Because the Decision of the ABCMR was not Arbitrary and Capricious, Contrary to law, or Unsupported by Substantial Evidence.**

### 1.  Standard of Review

Summary judgment is proper when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

4

of law. Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Diamond v. Atwood</u>, 43 F.3d 1538, 1540 (D.C. Cir. 1995). A genuine issue of material fact is one that would change the outcome of the litigation. See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 243 (1986). While all evidence and the inferences drawn therefrom must be considered in the light most favorable to the nonmoving party, see <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), summary judgment should be granted if the moving party submits "affirmative evidence that negates an essential element of the nonmoving party's claim" or demonstrates "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." <u>Celotex</u>, 477 U.S. at 331.[4]

The moving party may meet its burden by 'showing' that there is an absence of evidence to support the non-moving party's case. <u>Celotex</u>, 477 U.S. at 325. Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. <u>Matsushita</u>, 475 U.S. at 586.

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986). Unsupported speculation is not enough to defeat a summary judgment motion; the existence of specific material evidentiary facts must be shown. Fed. R. Civ. P. 56(e)(the nonmoving party may not rest on mere allegations but "must come forward with 'specific facts showing there is a genuine issue for trial.'"). See also <u>Hayes v. Shalala</u>,

---

[4] "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. Proc. 56(e)). Therefore, Plaintiff's failure to meet the Rule 56 standard of review by not providing any factual evidence sufficient to prove the elements of his claim will justify summary judgment as a matter of law.

902 F.Supp. 259, 263 (D.D.C. 1995)(opposition to summary judgment must consist of more than mere unsupported allegations or denials); Johnson v. Digital Equip. Corp., 836 F.Supp. 14, 18 (D.D.C. 1993)(evidence that is merely colorable or not sufficiently probative is insufficient to defeat summary judgment); Batson v. Powell, 912 F.Supp. 565, 578 (D.D.C. 1996).

In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1.).

## 2. Review is Limited Under the Administrative Procedure Act

Summary judgment is appropriate to resolve disputes over final administrative actions. "However, the court does not employ the standard under Fed. R. Civ. P. 56, but instead applies the standard of review under the relevant statute and the Administrative Procedure Act." Weingartner v. Wynne, 2007 U.S. Dist. LEXIS 22175, at n.2 (D.D.C. 2007).

Final agency action is subject to judicial review under the APA. The ABCMR is an "agency," see 5 U.S.C. 701(b)(1) (defining "agency" to include "each authority of the Government"), and its decision is considered an agency action for the purposes of this suit. See 5 U.S.C. § 704. Thus, the court must defer to the ABCMR's decision unless it is "arbitrary and capricious, contrary to law, or unsupported by substantial evidence." Weingartner, 2007 U.S. Dist. LEXIS 22175, at * 4; see Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997); Dickson v. Secretary of Defense, 68 F.3d 1396, 1404 (D.C. Cir. 1995).

"[T]hough judicial review of military records correction decisions incorporates the core 'arbitrary or capricious' standard of traditional administrative law, such review involves an

'unusually deferential application' of that standard." Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting Kreis, 866 F.2d at 1514). "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence." Id. (citing Orloff v. Willoughby, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."); Weingartner, 2007 U.S. Dist. LEXIS 22175, at * 8.

"The court's only task is to determine whether there is such relevant evidence as a reasonable mind might accept as adequate to support the [agency's] conclusions." Pierce v. Underwood, 487 U.S. 552, 564 (1988); accord Burlington Northern R. Co. v. Surface Transp. Bd., 114 F.3d 206, 210 (D.C. Cir. 1997). The court should consider whether the decision was based on a consideration of the relevant factors and whether there was a clear error of judgment," but a court "is not empowered to substitute its judgment for that of the agency." Pierce, 487 at 564. The "review is highly deferential," requiring a court to "presume the validity of agency action." Kisser v. Cisneros, 14 F.3d 615, 619 (D.C. Cir. 1994); see also American Horse Protection Ass'n, Inc. v. Yeutter, 917 F.2d 594, 596 (D.C. Cir. 1990); Motor Vehicles Mfrs. Ass'n. v. Ruckleeshaus, 719 F.2d 1159, 1164 (D.C. Cir. 1983). "[O]nly the most egregious [ABCMR] decisions" may be set aside by the courts. Kreis, 866 F.3d at 1514. A court should uphold a decision if "the agency has articulated a rational connection between the facts found and the choice made." Kisser, 14 F.3d at 619 (quoting Bowman Transportation v. Arkansas-Best Freight System, 419 U.S. 281, 285 (1974)).

"Agency findings of fact are reviewed for 'substantial evidence.'" JSG Trading Corp. v.

Dep't of Agric., 235 F.3d 608, 611 (D.C. Cir. 2001) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion when taking into account whatever in the record fairly detracts from its weight" (internal quotation marks omitted)); FPL Energy Maine Hydro LLC v. F.E.R.C., 287 F.3d 1151, 1160 (D.C. Cir. 2002)("The 'substantial evidence' standard requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence."). Weingartner, 2007 U.S. Dist. LEXIS 22175, at * 7-8.

The ABCMR's authorizing statute provides the agency with considerable discretion in determining whether to take corrective action with respect to an applicant's record. Kreis, 866 F.2d at 1512-14. The Secretary, acting through the ABCMR, "'may correct any military record of that department when he considers it necessary to correct an error or remove an injustice,' 10 U.S.C. 1552(a)(emphasis added), not simply whenever a court determines that certain objective conditions are met, i.e., that there has been an error or injustice." Kries, 866 F.2d at 1513-14 (noting that this scheme "exudes deference" to the Secretary and "substantially restrict[s] the authority of the reviewing court to upset the Secretary's determination"). Judicial review of the ABCMR's decision requires the Court "to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct." Id. at 1511; Weingartner, 2007 U.S. Dist. LEXIS 22175, at * 6.

To prevail, the "plaintiff has the burden of . . . providing cogent and clearly convincing evidence" and must overcome the presumption that military administrators discharge their duties correctly, lawfully, and in good faith." Smith v. Dalton, 927 F. Supp. 1, 4 (D.D.C. 1996); see also Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986) cert. denied, 479 U.S. 853 (1986). Thus, "[u]nless Congress specifically provided otherwise, courts traditionally have been reluctant to

intrude upon the authority of the Executive in military and national security affairs." Department of Navy v. Egan, 484 U.S. 518, 530 (1988).

"A court may set aside the Secretary's determination only if the court finds the determination to be (i) arbitrary and capricious; (ii) not based on substantial evidence; (iii) a result of material error or fact or material administrative error; or (iv) otherwise contrary to law. Weingartner, 2007 U.S. Dist. LEXIS 22175, at * 6 n. 4.

"Thus, as with traditional review of administrative agency actions, the court will not disturb the decision so long as the deciding body 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action,' including a 'rational connection between the facts found and the choice made.'" Weingartner, 2007 U.S. Dist. LEXIS 22175, at * 7 (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983); see also Kreis v. Sec'y of the Air Force, 406 F.3d 684, 686 (D.C. Cir. 2005).

### 3.  Titling and Indexing of Subjects of Criminal Investigations

The National Defense Authorization Act for Fiscal Year 2001 directed the Secretary of Defense to establish a uniform process within the Department of Defense to expunge the name and other identifying information of an individual subject to a criminal investigation from an official investigative report or central index in any case in which it is determined the entry was made contrary to Department of Defense requirements. Pub. L. 106-398 § 552 (October 30, 2000).  In response, the Department of Defense reissued Instruction ("DoDI") 5505.7 to update this procedure. DoDI 5505.7, Titling and Indexing Subjects of Criminal Investigations in the Department of Defense, ¶ 1.2. (January 7, 2003) (Exhibit A).    Paragraph 2 of DoDI5505.7, "Applicability and Scope" states:

This Instruction applies to:

2.1 The Office of the Secretary of Defense, the Military Departments, the Chairman of the Joint Chiefs of Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities in the Department of Defense (hereafter referred to collectively as "the DoD Components").

Id. at ¶ 2.  Titling is defined as "placing the name of a person . . . in the title block of a criminal investigative report."  Id. at Enclosure 1, ¶ E1.1.8.  When an individual is titled in a ROI, his or her name is indexed in the DCII.  Id. at 6.2.  The DCII is "[a] centralized database . . . of selected unique identifying information and security clearance data utilized by security and investigative agencies in the Department of Defense, as well as other Federal agencies, to determine security clearance status and the existence/physical location of criminal and personnel security investigative files."  Id. at Enclosure 1, ¶ E1.1.3.   The primary purpose for titling and indexing an individual or entity as the subject of a criminal investigation is to ensure that information in a report of investigation can be retrieved at some future time for law enforcement and security purposes."  Id. at ¶ 6.2.

CID must also submit criminal offender history data to the Federal Bureau of Investigation ("FBI") of all armed forces members they investigate for, among other crimes, false official statement, larceny, and frauds against the United States.  DoDI 5505.11, Fingerprint Card and Final Disposition Report Submission Requirements, ¶ 4, and Enclosure 1, ¶¶ E3.1.21, E3.1.33, and E3.1.34.7 (December 1, 1998) (Exhibit B).  Criminal history data includes fingerprints and a report of the results of findings and sentence, or final approval of a resignation, retirement, or discharge in lieu of court-martial.  Id. at  ¶¶ E2.1.2.2 and E2.1.4.  The FBI includes the criminal history data in the National Crime Information Center ("NCIC")

criminal history database.  Id. at ¶ 1.2.  The NCIC is a means for local, state, tribal, federal, and

international criminal justice agencies to exchange information.  28 C.F.R. § 20.3(n).

The standard for titling and indexing subjects of criminal investigations is "a

determination that credible information exists indicating that the subject committed a criminal

offense."  DoDI 5505.7, ¶ 6.3.   Once the subject of a criminal investigation is indexed, the name

shall remain in the DCII, even if a subsequent finding is that the subject did not commit the

offense under investigation.  Id. at ¶ 6.6.  Identifying information about the subject of a criminal

investigation shall be removed from the title block of a report of investigation and the DCII in

the case of mistaken identity; or if it is later determined that at the time the titling or indexing

was completed, credible information indicating that the subject committed a crime did not exist.

Id. at ¶¶ 6.6.1 and 6.6.2. When reviewing the appropriateness of a titling or indexing decision,

the reviewing official shall consider the investigative information available at the time the initial

titling or indexing decision was made to determine whether the decision was made in accordance

with the Department of Defense standard.  Id. at ¶ 6.9.

## 4.  The ABCMR Correctly Applied DoDI 5505.7

The ABCMR applied the correct standard in determining whether to remove Plaintiff's

name and identifying information from the ROI and DCII.  Plaintiff claims that the ABCMR

violated the provisions of Army Reg. 195-2, ¶ 4-4.b., by applying the "credible evidence

standard to Plaintiff's request to amend the ROI."  (Compl. ¶ 73); Army Reg. 195-2, Criminal

Investigation Activities (October 30, 1985) (Exhibit C).   Plaintiff's claim lacks merit because

DoDI 5505.7 supersedes Army Reg. 195-2.

Army Reg. 195-2, ¶ 4.4.b. states that "requests to delete a person's name from the title block [of

the ROI] will be granted if it is determined that probable cause does not exist to believe the individual committed the offense for which titled as a subject." Conversely, DoDI 5505.7 provides that identifying information about the subject of a criminal investigation shall be removed from the title block of a report of investigation and the DCII in the case of mistaken identity; or if it is later determined a mistake was made at the time of the titling or indexing occurred in that credible information indicating that the subject committed a crime did not exist. Id. at ¶¶ 6.6.1 and 6.6.2.

Army Reg. 195-2 became effective on October 30, 1985. Id. The National Defense Authorization Act for Fiscal Year 2001 directed the Secretary of Defense to establish a uniform process within the Department of Defense to expunge the name and other identifying information of an individual subject to a criminal investigation from an official investigative report or central index in any case in which it is determined the entry was made contrary to Department of Defense requirements. Pub. L. 106-398 § 552 (October 30, 2000). In response, the Department of Defense reissued DoDI 5505.7 on January 7, 2003 to update these procedures. DoDI 5505.7, ¶ 1.2. Accordingly, DoDI 5505.7 supersedes Army Reg. 195-2. The ABCMR therefore correctly determined that "the only way to administratively remove a titling action from the DCII is to show either mistaken identity or a complete lack of credible evidence to dispute the initial titling determination." (AR 7-8.)

Plaintiff further claims that the ABCMR's decision was contrary to applicable regulations, including DoDI 5505.7, ¶¶ 6.11.2 and 6.11.3, because the USACIDC's response to Plaintiff's request to amend the ROI was insufficient. (Compl. ¶ 74.) Paragraph 6.11.2 provides that "[h]eads of investigating organizations shall . . . solicit and consider written input from their

12

applicable line and staff functions and obtain a legal review before deciding whether or not to reverse the previous titling or indexing decision." Id. Paragraph 6.11.3 provides that "[t]he head of the investigating organization shall notify the requestor of the decision and provide information on other applicable channels from which to seek relief (e.g., the boards for correction of military records)." Id.

Plaintiff, through counsel, did not argue to the ABCMR that USACIDC failed to solicit staff input and a legal review, or that USACID's response to Plaintiff violated DoDI 5505.7. AR 14.; See Army Reg. 15-185, Army Board For Correction of Military Records, ¶ 2-2(c) (March 31, 2006) (The ABCMR decides cases on the evidence of record and it is not an investigative body). Consequently, Plaintiff cannot now claim that the ABCMR did not properly consider these issues when he raises such arguments for the first time before this Court. See Doyle v. United States, 220 Ct. Cl. 285, 311 (Ct. Cl. 1979) ("[A] party cannot raise an issue on appeal to a court when it failed to raise it before an administrative agency competent to hear it. . . ."). Moreover, Plaintiff's allegation of USACID's regulatory impropriety fails to overcome the "presumption that military administrators discharge their duties correctly, lawfully, and in good faith." Smith v. Dalton, 927 F. Supp. 1, 4 (D.D.C. 1996).

The ABCMR correctly applied DoDI 5505.7, the controlling standard for the Department of Defense, to Plaintiff's application for removal of his information from the ROI and DCII. Since Plaintiff did not raise any other allegations of impropriety to the ABCMR, he is barred from raising new arguments for the first time with this Court. This Court should accordingly dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.

### 5. The ABCMR Fully Considered Plaintiff's Arguments

13

The ABCMR considered each of Plaintiff's arguments in his 2006 application.  Plaintiff claimed that the government lacked probable cause to title him and that a recent ADRB decision determined he did not commit the offense for which he was titled.  (AR 12.)  Plaintiff claimed that there was no probable cause to title him because Lone Star's claim that Plaintiff hooked up the boat to his vehicle directly contradicted a letter from Plaintiff's friend who witnessed the boat damage the vehicle.  (AR 13.)  Plaintiff also argued that the ADRB decision found that the awarded discharge was inequitable, new evidence therefore demonstrates that the actions taken against Plaintiff were improper.  (AR 13.)  Plaintiff further claimed that "not only was the original titling action erroneous, but the titling of three offenses for what was essentially one transaction is equally egregious."  (AR 13.)

The ABCMR considered all of Plaintiff's arguments above, along with additional evidence in the record, and correctly determined that Plaintiff failed to meet the standard for removal of his information from the ROI and DCII.  (AR 4-9.)  The ABCMR, in addition to Plaintiff's arguments, found that the ROI included statements from three witnesses, which in effect indicated that Plaintiff hooked up the boat himself, with some help from an employee, and drove down the ramp when the boat came off the hitch and went forward into Plaintiff's vehicle.  (AR 6.)  Two witnesses related that they heard Plaintiff admit that he had damaged the propeller going over rocks at a lake, but that he was going to file a claim to be reimbursed for the damage.  (AR 6.)  On May 15, 1997, a judge advocate opined there was probable cause to believe that Plaintiff had committed the offenses of fraud, attempted larceny of government funds, and false official statement.

The ABCMR correctly determined that the only way to remove a titling action from the

14

DCII is to show either a mistaken identity or a complete lack of credible evidence to dispute the

initial titling determination.  After balancing all of Plaintiff's arguments with the additional

evidence in the record, the ABCMR correctly held that Plaintiff failed to provide sufficient

evidence to meet the standard for removal.  (AR 8.)  It reasoned that "[t]he evidence in the

record confirms that the results of a CID investigation provided a sufficient legal basis for the

applicant to be titled for fraud, attempted larceny of government funds, and false official

statement as confirmed by the judge advocate on 15 May 1997."  (AR 8.)   It also reasoned that

the ADRB did not condone Plaintiff's misconduct, but upgraded Plaintiff's characterization of

discharge based solely on equity.  (AR 6)

     Plaintiff now claims that the ABCMR did not consider contradicting testimony from

Lone Star employees. (Compl. ¶ 66.)  Plaintiff alleges Lone Star employees offered

contradictory testimony at an Article 32 hearing[5] and a claims officer testified that it is common

for carriers to deny causing property damage.  (Compl. ¶¶  35-41.)  Plaintiff's claim is

misplaced, however, as Plaintiff, through his counsel, never presented these facts or arguments

to the ABCMR.  (AR 11-35.)  See  Army Regulation 15-185, ¶ 2-2(c) (The ABCMR decides

cases on the evidence of record and it is not an investigative body).  Plaintiff cannot now claim

the ABCMR's decision is arbitrary and capricious for not considering facts and arguments

Plaintiff never presented to the ABCMR.  See Doyle, 220 Ct. Cl. at 311 (Ct. Cl. 1979) ("[A]

_____

[5] Article 32, Uniform Code of Military Justice ("UCMJ"), provides that no charge or
specification may be referred to a general court-martial for trial until a through and impartial
investigation of all the matters set forth therein has been made.  Article 32, UCMJ; 10 U.S.C. §
832.  The investigation includes inquiry into the truth of the matter set forth in the charges,
consideration of the form of the charges, and a recommendation as to the disposition which
should be made of the case.  Id.

party cannot raise an issue on appeal to a court when it failed to raise it before an administrative agency competent to hear it . . . .").

The ABCMR fully considered all of the arguments Plaintiff presented in his 2006 application.  Plaintiff cannot now claim the ABCMR's decision is arbitrary and capricious for not considering arguments that Plaintiff never presented to the ABCMR.  This Court should accordingly dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.

## 6.  <u>Plaintiff Fails to Meet the Standard for Removal of His Name from the ROI and DCII</u>

The ABCMR appropriately found that no relief was warranted because Plaintiff fails to meet the standard for removal.  Identifying information about the subject of a criminal investigation shall be removed from the title block of a report of investigation and the DCII in the case of mistaken identity; or if it is later determined a mistake was made at the time of the titling or indexing occurred in that credible information indicating that the subject committed a crime did not exist.  DoDI 5505.7,  ¶¶ 6.6.1 and 6.6.2.  Credible information is "[i]nformation disclosed or obtained by an investigator that, considering the source and nature of the information and the totality of the circumstances, is sufficiently believable to lead a trained investigator to presume that the fact or facts in question are true."  <u>Id</u>. at ¶ E1.1.1.  When reviewing the appropriateness of a titling or indexing decision, the reviewing official shall consider the investigative information available at the time the initial titling or indexing decision was made.  <u>Id</u>. at ¶ 6.9.

The narrative of the three witnesses' statements included in the ROI state that Plaintiff's boat propeller was damaged before Lone Star stored the boat; Plaintiff admitted to two of the

witnesses that he damaged the propeller going over rocks at a lake, but was going to file a property damage claim; and that Plaintiff hooked up the boat to his vehicle. (AR 18-9.) Plaintiff filed a property damage claim alleging that Lone Star damaged his boat and vehicle. On May 15, 1997, a judge advocate opined that probable cause existed to believe that Plaintiff committed the offenses of fraud, attempted larceny of government funds, and false official statement. Considering the source and nature of the information available to the investigator at the time of the titling and indexing decision and the totality of the circumstances, this information would lead a trained investigator to determine Plaintiff committed the titled offenses.

Plaintiff's new argument that he should not be titled because of contradictory evidence and Article 32 is inconsistent with the recommendations of the Article 32 investigating officer, who considered this evidence and testimony, but recommended that Plaintiff "go before a general court-martial" because there was "sufficient evidence to warrant all charges." (AR 296.) Plaintiff's reliance on the 2005 ADRB decision to meet the removal standard also lacks merit. The ADRB made its decision eight years after the titling decision and is consequently outside the scope of a reviewing official's consideration as the decision was not available at the time the titling or indexing decision was made. DoDI 5505.7, ¶ 6.9. Moreover, the ADRB expressly stated that it did not condone Plaintiff's misconduct. Even if the ADRB had found that Plaintiff did not commit the offense under investigation, a subsequent finding of innocence is not a ground for removal of a person from the DCII. Id. at ¶ 6.6. The ABCMR accordingly found that the ADRB's decision "provides insufficient support to grant relief." (AR 8.)

There is no genuine issue of material fact because Plaintiff failed to provide specific evidence that the ABCMR decision was arbitrary or capricious, contrary to law, or unsupported

by substantial evidence. The ABCMR applied the correct standard for determining whether to remove Plaintiff from the ROI and DCII, considered all of Plaintiff's arguments, and properly decided, based upon the evidence in the record, that Plaintiff failed to show that there was a lack of credible evidence at the time CID decided to title and index Plaintiff for fraud, attempted larceny of government funds, and false official statement. Plaintiff cannot raise new facts and arguments for the first time with this Court and rest on mere allegations that the ABCMR decision was arbitrary and capricious; he must provide specific facts to show a genuine issue for trial or some objective evidence to enable the Court to find he is entitled to relief. Applying the standard of Rule 56 of the Federal Rules of Civil Procedure, the Defendant is entitled to judgment as a matter of law.

## VI.  CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that this Court enter judgment in favor of the Defendant denying Plaintiff's claims.

Respectfully submitted,

_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

18

_____/s_____
LANNY J. ACOSTA
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

Of Counsel:
Captain Patrick B. Grant
U.S. Army Litigation Division
Arlington, VA

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MICHAEL S. ESCOBEDO** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Civil Action No. 1:08-cv-00575** |
| | ) **(RMC)** |
| | ) |
| **THE HONORABLE PETE GEREN** | ) |
| **Secretary of the Army,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**
**TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to LCvR 7(h) and in support of Defendant's Motions for Summary Judgment,

Defendant respectfully submits this statement of material facts as to which there is no genuine

dispute.  The Administrative Record ("AR") supports this statement.

1. The Army appointed Plaintiff, Michael S. Escobedo, a Captain in the Medical Corps of the

United States Army Reserve on May 20, 1995.  (Compl. ¶ 15 and AR 485.)

2.  In June 1996, Plaintiff attended the U.S. Army Flight Surgeon primary course.  Prior to his

attendance, a private contractor Lone Star Van Lines ("Lone Star") packed and stored Plaintiff's

boat and household property.  (Compl. ¶ 19.)

3.  Plaintiff entered active duty in the United States Army on July 7, 1996.  (Compl. ¶ 15 and AR

596.)  He served in the military occupational specialty 61N 9D, Flight Surgeon.  (Compl. ¶ 18

and AR 596.)

4.  On August 23, 1996, Plaintiff picked up his boat from Lone Star's storage facility.  (Compl. ¶

1

21.)

5.  Plaintiff filed a property damage claim with the III Corps Claims Office for damage to his boat and vehicle on October 18, 1996.  (AR 198.)

6.  The III Corps Claims Office reported to Criminal Investigation Division ("CID") that Plaintiff submitted a claim for damage to his boat and vehicle caused by Lone Star improperly hitching the boat to Plaintiff's vehicle.  Lone Star stated that Plaintiff had hooked up his boat himself and that Plaintiff commented that he bent the propeller on his boat himself, but was going to make the Army pay for it.  (AR 17-9.)

7.  A CID Report of Investigation ("ROI") dated August 2, 1997 states that "[i]nvestigation established probable cause to believe Escobedo committed the offense of Fraud, Attempted Larceny of Government Funds, and False Official Statement when he submitted a fraudulent claims packet for $724.73, alleging his boat was damaged in shipping."  (Compl. ¶ 32 and AR 16.)

8.  The ROI provides a narrative of the CID Special Agent's interviews of the complainant and three witnesses.  (AR 17-8.)

9.  The Special Agent's narrative concerning his interview of the first witness states that Plaintiff caused the damage to his vehicle.  (AR 17.)  The witness claimed that Plaintiff backed his truck up to the loading dock, hooked up his boat himself, drove down the ramp, and the boat came off of the hitch and hit the truck.  (AR 17.)  The witness stated that the propeller on the Plaintiff's boat never touched the ground and that is was bent prior to the boat being placed in their storage facility.  She also stated that Plaintiff joked about how he bent the propeller going over some rocks at a lake, but that he was going to file a claim to be reimbursed for the propeller.

2

(AR 17.)

10.  The Special Agent's narrative concerning his interview of the second witness states that the witness recalled Plaintiff "talking about how he had damaged the propeller on his boat by going over some rocks, but he was going to file a claim against the United States Army to be reimbursed."  (AR 18.)

11.  The Special Agent's narrative of his interview of the third witness states "he assisted Escobedo in putting the ball hitch on Escobedo's truck. . . . he did not know how to work the locking device on the trailer, therefore, he told Escobedo he would have to do it at which time Escobedo stated he would take care of it."  He further related that "Escobedo hooked up the chains and lights."  "Escobedo said he damaged the propeller to his boat while boating at an unknown lake; and that he was going to put in a claim to the military for the damage."  (AR 18.)

12.  On May 15, 1997, a Judge Advocate opined that there was probable cause to believe Plaintiff committed the offenses of fraud, attempted larceny of government funds, and false official statement.  (AR 19.)

13.  On June 18, 1997, an impartial Article 32, Uniform Code of Military Justice ("UCMJ"), investigating officer accepted evidence and heard testimony concerning court-martial charges against Plaintiff arising, in part, from his property damage claim.  (AR 263.)  The investigating officer recommended trial by general court-martial because the evidence was sufficient to warrant all charges.  (AR 296.)

14.  Plaintiff submitted a request for discharge in lieu of trial by court-martial.  (Compl. ¶ 45 and AR 99-100.)

15.  The Army approved Plaintiff's request for discharge in lieu of trial by court-martial and

discharged Plaintiff under other than honorable conditions on January 13, 1998.  (Compl.  ¶ 46 and AR 91.)

16.  On September 15, 2004, Plaintiff submitted an application to the Army Discharge Review Board ("ADRB") asking the board to upgrade his discharge characterization to honorable. (Compl. ¶ 47 and AR 73-84.)  The ADRB granted Plaintiff's request reasoning that "[t]he board does not condone the applicant's misconduct; however, it determined that the discharge is inequitable.  The applicant's misconduct was mitigated by service of sufficient length and merit to warrant an upgrade of the discharge being reviewed."  (Compl. ¶ 48 and AR 69.)

17.  On January 11, 2006, Plaintiff applied to the U.S. Army Criminal Investigation Command ("USACIDC") requesting amendment of the ROI which titled Plaintiff for the offenses of fraud, larceny of government funds, and false official statement.  (Compl. ¶ 51 and AR 36-58.)   On May 8, 2006, USACIDC denied Plaintiff's request because the Army discharged Plaintiff under other than honorable conditions in lieu of trial by general court-martial.  (Compl. ¶ 53 and AR 10.)

18.  In 2006, Plaintiff petitioned the Army Board for Correction of Military Records ("ABCMR") to remove his name from the titling block of the ROI.  (Compl. ¶ 54 and AR 11-35).  The ABCMR denied the petition because Plaintiff failed to show that there was a mistaken identity or a complete lack of credible evidence to dispute the initial titling determination. (Compl. ¶ 56 and AR 8.)

Respectfully submitted,


_____/s_____
JEFFREY A. TAYLOR, D.C. Bar # 498610

4

United States Attorney

_____/s_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s_____
LANNY J. ACOSTA, Jr.,
Special Assistant United States Attorney
Civil Division
555 Fourth St., N.W.
Washington, D.C. 20530
202-353-9895

Of Counsel:
Captain Patrick B. Grant
U.S. Army Litigation Division
Arlington, VA

Exhibit A



# Department of Defense
# INSTRUCTION

NUMBER 5505.7

January 7, 2003

SUBJECT:  Titling and Indexing Subjects of Criminal Investigations in the Department of Defense

References:  (a)  DoD Instruction 5505.7, subject as above, May 14, 1992 (hereby canceled)
            (b)  Appendix 3 of title 5, United States Code
            (c)  DoD Directive 5106.1, "Inspector General of the Department of Defense (IG, DoD)," January 4, 2001
            (d)  Public Law 106-398, "The National Defense Authorization Act for Fiscal Year 2001," October 30, 2000

## 1. REISSUANCE AND PURPOSE

This Instruction reissues reference (a) to:

    1.1.  Update responsibilities and procedures that provide a uniform standard for titling and indexing subjects of criminal investigations in the Department of Defense under the authority of the Inspector General of the Department of Defense, in accordance with references (b) and (c).

    1.2.  Update procedures to create a uniform process that affords individuals titled in criminal investigative reports or indexed in the Defense Clearance and Investigations Index (DCII) an opportunity to obtain a review of such actions, as required by reference (d).

## 2. APPLICABILITY AND SCOPE

This Instruction applies to:

*DODI 5505.7, January 7, 2003*

2.1.  The Office of the Secretary of Defense, the Military Departments, the Chairman of the Joint Chiefs of Staff, the Combatant Commands, the Office of the Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities in the Department of Defense (hereafter referred to collectively as "the DoD Components").

3. <u>DEFINITIONS</u>

Terms used in this Instruction are defined in enclosure 1.

4. <u>POLICY</u>

It is DoD policy under "The Inspector General Act of 1978" (Appendix 3 of 5 U.S.C.), and DoD Directive 5106.1 (references (b) and (c)) that the Inspector General of the Department of Defense shall develop policy and provide guidance with respect to all DoD activities relating to criminal investigative programs.  Accordingly, subjects of criminal investigations shall be titled and indexed in accordance with the procedures below.

5. <u>RESPONSIBILITIES</u>

5.1.  The Inspector General of the Department of Defense shall monitor compliance with this Instruction under, "The Inspector General Act of 1978" (Appendix 3 of 5 U.S.C.), and DoD Directive 5106.1 (references (b) and (c)).

5.2.  The <u>Heads of the DoD Components</u> shall:

5.2.1.  Ensure that this Instruction, particularly the review process described in paragraph 6.3., below, is known and understood by organizations that may provide assistance to employees and Service members on criminal investigative matters.

5.2.2.  Designate the investigative officials who shall have final responsibility for the decision to title an individual or entity.

*DODI 5505.7, January 7, 2003*

6. <u>PROCEDURES</u>

6.1.  Organizations engaged in the conduct of criminal investigations shall place the names and identifying information pertaining to subjects of criminal investigations in title blocks of investigative reports.  All names of individual subjects of criminal investigations by DoD organizations shall be listed in the DCII.  (This Instruction does not preclude the titling and indexing of victims or "incidentals" associated with criminal investigations.)  Titling and indexing in the DCII shall be done as early in the investigation as it is determined that credible information exists that the subject committed a criminal offense.

6.2.  The purpose of listing an individual or entity as the subject of a criminal investigation in the DCII is to ensure that information in a report of investigation may be retrieved at some future time for law enforcement or security purposes.  The purpose of titling the report of a criminal investigation is to identify the subject for the accuracy and efficiency of the investigative effort.

6.3.  The DoD standard that shall be applied when titling and indexing subjects of criminal investigations is a determination that credible information exists indicating that the subject committed a criminal offense.

6.4.  Responsibility for titling investigative reports and indexing shall rest with the investigative officials designated to do so by the Heads of the DoD Components.

6.5.  Titling an individual or entity is an operational rather than a legal decision. The acts of titling and indexing are administrative procedures and shall not connote any degree of guilt or innocence.

6.5.1.  The listing of a subject's name and other identifying information in the DCII indicates only that a report of investigation concerning that person or entity has been created.

6.5.2.  Judicial or adverse administrative actions shall not be taken against individuals or entities based solely on the fact that they have been titled or indexed due to a criminal investigation.

6.6.  Once the subject of a criminal investigation is indexed, the name shall remain in the DCII, even if a later finding is made that the subject did not commit the offense under investigation, subject to the following exceptions:

6.6.1.  Identifying information about the subject of a criminal investigation shall be removed from the title block of a report of investigation and the DCII in the

DODI 5505.7, January 7, 2003

case of mistaken identity; i.e., the wrong person's name was placed in the report of investigation as a subject or entered into the DCII.

6.6.2.  Identifying information about the subject of a criminal investigation shall be removed from the title block of a report of investigation and the DCII if it is later determined a mistake was made at the time the titling and/or indexing occurred in that credible information indicating that the subject committed a crime did not exist.

6.7.  If a determination is made that a subject's identifying information requires removal or correction, investigating organizations shall remove such information as soon as possible, and shall make appropriate corrections to all reports of investigation and the DCII, which shall include, if appropriate, entering the correct name on the reports and in the DCII.

6.8.  An individual or a business entity seeking access to an investigative file must request the file from the organization that has custody of the file.

6.9.  When reviewing the appropriateness of a titling/indexing decision, the reviewing official shall consider the investigative information available at the time the initial titling/indexing decision was made to determine whether the decision was made in accordance with the standard stated in paragraph 6.3.

6.10.  An individual (or representative of a business entity) who believes he or she (or the business entity represented) was titled or indexed wrongly may appeal to the head of the investigating organization to obtain a review of the decision.

6.11.  Organizations engaged in the conduct of criminal investigations shall establish a written process, as further described below, whereby individuals or entities who have been titled or indexed may obtain a review of such decisions.  A copy of that procedure shall be provided to the Deputy Assistant Inspector General, Criminal Investigative Policy and Oversight, Office of the Inspector General of the Department of Defense, as well as any subsequent revisions of the policy.

6.11.1.  The review process must include the requirement that an individual seeking a review of a titling and indexing decision submit a written request to the head of the investigating organization giving reasons for the reversal of the determination.

6.11.2.  Heads of investigating organizations shall then solicit and consider written input from their applicable line and staff functions and obtain a legal review before deciding whether or not to reverse the previous titling or indexing decision.

*DODI 5505.7, January 7, 2003*

6.11.3.  The head of the investigating organization shall notify the requestor of the decision and provide information on other applicable agency channels from which to seek relief (e.g., boards for the correction of military records).

6.11.4.  Decisions on whether or not to reverse the decision shall be documented and appropriately filed.


7.  <u>EFFECTIVE DATE</u>

This Instruction is effective immediately.



Joseph E. Schmitz
Inspector General



Enclosures - 1
    E1.  Definitions

5

*DODI 5505.7, January 7, 2003*

E1.  ENCLOSURE 1

DEFINITIONS

E1.1.1.  Credible Information.   Information disclosed or obtained by an investigator that, considering the source and nature of the information and the totality of the circumstances, is sufficiently believable to lead a trained investigator to presume that the fact or facts in question are true.

E1.1.2.  Criminal Investigation.   Investigation into alleged or apparent violations of law undertaken for purposes which include the collection of evidence in support of potential criminal prosecution.

E1.1.3.  Defense Clearance and Investigations Index (DCII).   A centralized database, organized in a searchable format, of selected unique identifying information and security clearance data utilized by security and investigative agencies in the Department of Defense, as well as selected other Federal agencies, to determine security clearance status and the existence/physical location of criminal and personnel security investigative files.   The DCII database is physically maintained by the Defense Security Service; however, the data it contains is the responsibility of the contributing agencies.

E1.1.4.  Incidental.   Any person or entity associated with a matter under investigation whose identity may be of subsequent value for law enforcement or security purposes.

E1.1.5.  Indexing.   Refers to the procedure whereby an organization responsible for conducting criminal investigations submits identifying information concerning subjects, victims, or incidentals of investigations for addition to the Defense Clearance and Investigations Index (DCII).

E1.1.6.  Subject.   A person, corporation, or other legal entity about which credible information exists that would cause a trained investigator to presume that the person, corporation, or other legal entity committed a criminal offense.

E1.1.7.  Title Block.   Portion of an investigative report used to identify the persons, entities, or activities on which the investigation focuses.

E1.1.8.  Titling.   Placing the name(s) of a person(s), corporation(s), other legal entity, organization(s), or occurrence(s) in the title block of a criminal investigative report.

Exhibit B



Department of Defense
# INSTRUCTION

NUMBER 5505.11

December 1, 1998

IG, DoD

SUBJECT:  Fingerprint Card and Final Disposition Report Submission Requirements

References:  (a)  Inspector General of the Department of Defense, Criminal
                  Investigations Policy Memorandum Number 10, "Criminal History
                  Data Reporting Requirements," March 25, 1987 (hereby canceled)
             (b)  Appendix 3 of title 5, United States Code
             (c)  DoD Directive 5106.1, "Inspector General of the Department of
                  Defense," March 14, 1983
             (d)  Title 28, Code of Federal Regulations, Part 20, "Criminal Justice
                  Information System" (July 1, 1997)
             (e)  through (k) see enclosure 1


1.  <u>PURPOSE</u>

This Instruction:

   1.1.  Supersedes reference (a) under the authority of references (b) and (c).

   1.2.  Implements policy, assigns responsibilities, and prescribes procedures under
references (d) and (e) for reporting offender criminal history data to the Criminal
Justice Information Services (CJIS) Division of the FBI, by the DoD law enforcement
organizations, for inclusion in the National Crime Information Center criminal history
databases.   This Instruction is not intended to eliminate requirements to provide
criminal history data otherwise imposed, including the Defense Incident Based
Reporting System.


2.  <u>APPLICABILITY AND SCOPE</u>

This instruction applies to:

2.1.  The Office of the Secretary of Defense, the Military Departments, the Chairman of the Joint Chiefs of Staff, the Combatant Commands, the Inspector General of the Department of Defense, and the Defense Agencies (hereafter referred to collectively as "the DoD Components").

2.2.  The Defense Criminal Investigative Organizations (DCIOs) and all other DoD criminal investigative or police organizations that investigate crimes for which criminal history data reporting is required by this Instruction.

## 3.  DEFINITIONS

Terms used in this Instruction are defined in enclosure 2.

## 4.  POLICY

It is DoD policy, under Appendix 3 of title 5 United States Code and DoD Directive 5106.1 (references (b) and (c)), that the DCIOs and all other DoD criminal investigative and police organizations shall submit to the FBI as prescribed herein, offender criminal history data for all Armed Forces members they investigate for commission of an offense listed in enclosure 3.

## 5.  RESPONSIBILITIES

5.1.  The Inspector General of the Department of Defense shall monitor and evaluate compliance with this Instruction.

5.2.  The Secretaries of the Military Departments and the Heads of the other DoD Components shall:

5.2.1.  Issue regulations, as may be necessary, to implement and comply with this Instruction.

5.2.2.  Ensure that Commanders establish and follow procedures to promptly notify the appropriate DCIO or other DoD criminal investigative or police organization:

5.2.2.1.  When a military judicial proceeding is initiated or command action is taken in nonjudicial proceedings (as defined in enclosure 2) against a military subject investigated by a law enforcement organization for an offense listed in

enclosure 3.

       5.2.2.2.  Of the final disposition of such military judicial or nonjudicial proceeding.

6.  <u>PROCEDURES</u>

   6.1.  Fingerprints and all additional information required by the FD-249, "Suspect Fingerprint Card," shall be obtained from military suspects under investigation by the DCIOs or any other DoD criminal investigative or police organization for offenses listed in enclosure 3.   Where required, a Privacy Act Statement shall be provided to each suspect whose personal data is collected under DoD 5400.11-R (reference (h)).

   6.2.  Offender criminal history data records required under this Instruction are to be initiated by preparing and submitting an FD-249 (enclosure 4), to the CJIS, FBI.

      6.2.1.  The FD-249 shall be submitted when a command initiates military judicial proceedings, or when command action is taken in nonjudicial proceedings (as defined in enclosure 2) against a military subject investigated for the commission of an offense listed in enclosure 3.

      6.2.2.  Submission of the FD-249 shall occur within 15 days of command initiation of military judicial proceedings or when command action is taken in nonjudicial proceedings against a military subject (as defined in enclosure 2).

      6.2.3.  If final disposition of the proceeding is anticipated within 60 days of command initiation of military judicial proceedings or of command action in nonjudicial proceedings (as defined in enclosure 2), the FD-249 may be held and final disposition recorded on the FD-249.   If the final disposition is not recorded on the FD-249, then an FBI/DoJ Form R-84, "Final Disposition Report," enclosure 5, is required.

      6.2.4.  If final disposition is not anticipated within 60 days, submission of the FD-249 shall not be delayed by the local investigative office pending completion of military judicial or nonjudicial proceedings.

      6.2.5.  If applicable, approval of a request for discharge, retirement, or resignation in lieu of court-martial, and/or a finding of lack of mental competence to stand trial shall be recorded as "final disposition" either on the FD-249 or R-84, as appropriate.

*DODI 5505.11, December 1, 1998*

6.3.  Within 15 days after final disposition of judicial or nonjudicial proceedings, or the approval of a request for discharge, retirement, or resignation in lieu of court-martial, disposition information shall be reported by the DCIOs or other DoD criminal investigative or police organizations on the R-84, or an electronic data transfer equivalent, if it has not already been reported on an FD-249.   Do not hold the FD-249 pending appellate actions; however, appellate action affecting the character of an initial disposition must be reported if it occurs.   Dispositions that are exculpatory in nature (e.g., dismissal of charges, acquittal) shall also be filed.

## 7.  <u>INFORMATION REQUIREMENTS</u>

7.1.  The FBI shall provide, at no cost, FD-249 fingerprint cards, FBI/DoJ Forms R-84, pre-addressed envelopes, and further guidelines for submission of criminal history data.   Address requests for supplies and the "Guidelines for Preparation of Criminal Justice Information Services Division, Fingerprint Cards," March 1996, to the Personnel Division, Federal Bureau of Investigation, Washington, DC 20535.

7.2.  Where necessary, DCIOs and other DoD criminal investigative or police organization personnel shall be provided training (offered by the FBI at no cost) on fingerprinting and completion of the forms required under this Instruction.

7.3.  When submitting the FD-249 and FBI/DoJ Form R-84, charges must be described in commonly understood descriptive terms as specified in enclosure 3 (e.g., murder, rape, robbery, assault, possession of a controlled substance, etc.) or, if not specified in enclosure 3, by commonly understood title.   Offenses shall not be described solely by references to a Uniform Code of Military Justice (UCMJ) (reference (g)) punitive article, or to the United States Code or other statutory provision.   Investigators must ensure that the charges annotated on the FD-249 reflect the actual charges being pursued through court-martial or nonjudicial punishment.

7.4.  The disposition reflected on the FD-249 or the FBI/DoJ Form R-84 must also be described in common language; e.g., conviction (include offense(s)), dishonorable discharge, reduction in rank, forfeiture of pay, charges dismissed, etc.   The disposition of "conviction" shall only be reported for crimes prosecuted at trials by general, special, or summary court-martial yielding a plea or finding of guilty.   Adverse findings stemming from nonjudicial proceedings should be recorded as "nonjudicial disciplinary action."

7.5.  The DoD internal reporting of criminal history data is exempt from licensing

*DODI 5505.11, December 1, 1998*

in accordance with paragraphs 5.4.2. and 5.4.7. of DoD 8910.1-M (reference (i)).   The interagency reporting required by this Instruction is exempt from licensing in accordance with paragraph (b)(2)(iii) of 41 CFR 101-11.204 (reference (j)).

8.  <u>EFFECTIVE DATE</u>

This Instruction is effective immediately.

Eleanor Hill
Inspector General

Enclosures - 5
    E1.  References, continued
    E2.  Definitions
    E3.  Listed Offenses
    E4.  Figure 4-1. FD-249, "Suspect Fingerprint Card"
    E5.  Figure 5-1. FBI/DoJ Form R-84, "Final Disposition Report"

E1.  <u>ENCLOSURE 1</u>

<u>REFERENCES</u>, continued

(e)  Section 534 of title 28, United States Code

(f)  Manual for Courts-Martial, United States, 1984 (Executive Order 12473, as amended by Executive Order 12484)

(g)  Chapter 47 of title 10, United States Code (Uniform Code of Military Justice, 10 U.S.C. 801-946)

(h)  DoD 5400.11-R, "Department of Defense Privacy Program," August 1983, authorized by DoD Directive 5400.11, June 9, 1982

(i)  <u>DoD 8910.1-M</u>, "DoD Procedures for Management of Information Requirements," November 1986, authorized by <u>DoD Directive 8910.1</u>, June 11, 1993

(j)  Federal Property Management Regulation Title 41 CFR Part 101-11.204, "Interagency Reports Management Program"

(k)  Section 13 of title 18, United States Code, "Laws of States adopted for areas within Federal jurisdiction"

*DODI 5505.11, December 1, 1998*

E2.  ENCLOSURE 2

DEFINITIONS

E2.1.1.  <u>Defense Criminal Investigative Organizations</u>.    The Defense Criminal Investigative Service, the U.S. Army Criminal Investigation Command, the Naval Criminal Investigative Service, and the Air Force Office of Special Investigations.

E2.1.2.  <u>Military Judicial Proceeding</u>.    A summary, special, or general court-martial, under the Uniform Code of Military Justice (10 U.S.C. 801-946 (reference (g))).

E2.1.2.1.  <u>Initiation</u>.    The referral of court-martial charges to a specified court by the convening authority under the Manual for Courts-Martial (MCM) (reference (f)), Rules for Courts-Martial (RCM) 601, or receipt by the command of an accused Service member's request for resignation, retirement, or discharge in lieu of court-martial.

E2.1.2.2.  <u>Final disposition of military judicial proceedings</u>.    Action by the trial counsel to report the results of the findings and sentence under the MCM (reference (f)), RCM 1101(a), or final approval of a resignation, retirement, or discharge in lieu of court-martial.

E2.1.3.  <u>Military Nonjudicial Proceeding</u>.    Proceedings under Article 15, Uniform Code of Military Justice (UCMJ).

E2.1.3.1.  <u>Command Action</u>.    Point in time when a commanding officer in the grade of major or lieutenant commander or above completes action to impose nonjudicial punishment, as specified in paragraph 4, Part V, MCM (reference (f)).

E2.1.3.2.  <u>Final Disposition</u>.    Action on an appeal by the next superior authority or expiration of the time limit to file an appeal or the date the Service member indicates that an appeal shall not be submitted, as specified in paragraph 7, Part V, MCM (reference (f)).

E2.1.4.  <u>Offender Criminal History Data</u>.    The information, including fingerprints, that is recorded on the front and back of a standard Suspect Fingerprint Card (FBI Form FD-249) and Final Disposition Report (FBI/DoJ R-84), or their electronic data transfer equivalent.

*DODI 5505.11, December 1, 1998*

E3.  ENCLOSURE 3

OFFENSES UNDER SECTIONS 801-946 OF 10 U.S.C., (REFERENCE (G)) 1 THAT REQUIRE SUBMISSION OF OFFENDER CRIMINAL HISTORY DATA TO THE CRIMINAL JUSTICE INFORMATION SERVICES DIVISION, FBI, BY THE DCIOs AND ALL OTHER DoD LAW ENFORCEMENT ORGANIZATIONS

E3.1.1.  Article 78.   Accessory after the fact (for crimes listed in this enclosure).

E3.1.2.  Article 80.   Attempts (for crimes listed in this enclosure).

E3.1.3.  Article 81.   Conspiracy (for crimes listed in this enclosure).

E3.1.4.  Article 82.   Solicitation.

E3.1.5.  Article 85.   Desertion.

E3.1.6.  Article 90.   Assaulting a superior officer.

E3.1.7.  Article 91.   Striking or assaulting warrant, noncommissioned, or petty officer.

E3.1.8.  Article 94.   Mutiny or sedition.

E3.1.9.  Article 95.   Resistance, breach of arrest, and escape.

E3.1.10.  Article 106.   Spies.

E3.1.11.  Article 106a.   Espionage.

E3.1.12.  Article 107.   False Official Statements.

E3.1.13.  Article 108.   Military property of the United States; sale, loss, damage, destruction, or wrongful disposition.

E3.1.14.  Article 109.   Willfully destroying or damaging private property.

E3.1.15.  Article 111.   Drunk driving.

---

1  Sections 1 through 33 in this enclosure, below, are under reference (g).

*DODI 5505.11, December 1, 1998*

E3.1.16.  <u>Article 112a</u>.     Wrongful use, possession, etc., of controlled substances.

E3.1.17.  <u>Article 116</u>.    Riot

E3.1.18.  <u>Article 118</u>.    Murder.

E3.1.19.  <u>Article 119</u>.    Manslaughter.

E3.1.20.  <u>Article 120</u>.    Rape and carnal knowledge.

E3.1.21.  <u>Article 121</u>.    Larceny and wrongful appropriation.

E3.1.22.  <u>Article 122</u>.    Robbery.

E3.1.23.  <u>Article 123</u>.    Forgery.

E3.1.24.  <u>Article 123a</u>.     Bad Checks (in an amount over 100 dollars)

E3.1.25.  <u>Article 124</u>.    Maiming.

E3.1.26.  <u>Article 125</u>.    Sodomy.

E3.1.27.  <u>Article 126</u>.    Arson.

E3.1.28.  <u>Article 127</u>.    Extortion.

E3.1.29.  <u>Article 128</u>.    Assault.

E3.1.30.  <u>Article 129</u>.    Burglary.

E3.1.31.  <u>Article 130</u>.    Housebreaking.

E3.1.32.  <u>Article 131</u>.    Perjury.

E3.1.33.  <u>Article 132</u>.    Frauds against the United States.

E3.1.34.  The following offenses under Article 134, listed in the Manual for Courts-Martial (reference f):

E3.1.34.1.  <u>Assault</u>.    Indecent.

E3.1.34.2.  <u>Assault</u>.    With intent to commit murder, voluntary manslaughter,

rape, robbery, sodomy, arson, burglary, or housebreaking.

E3.1.34.3.  Assaulting a Federal officer in the performance of duties.

E3.1.34.4.  Bribery and graft.

E3.1.34.5.  Burning with intent to defraud.

E3.1.34.6.  False pretenses, obtaining services under (value of more than 100 dollars).

E3.1.34.7.  False swearing.

E3.1.34.8.  <u>Firearm, discharge</u>.    Willfully, under such circumstances as to endanger human life.

E3.1.34.9.  Fleeing the scene of an accident.

E3.1.34.10.  Homicide, negligent.

E3.1.34.11.  False personation with intent to defraud.

E3.1.34.12.  Indecent acts or liberties with a child.

E3.1.34.13.  Indecent exposure.

E3.1.34.14.  Indecent language (communicating to any child under the age of 16 years).

E3.1.34.15.  Indecent acts with another.

E3.1.34.16.  Kidnapping.

E3.1.34.17.  <u>Mails</u>.    Taking, opening, secreting, destroying, or stealing.

E3.1.34.18.  <u>Mails</u>.    Depositing or causing to be deposited obscene matters in [mail].

E3.1.34.19.  Misprision of serious offense.

E3.1.34.20.  Obstructing justice.

*DODI 5505.11, December 1, 1998*

E3.1.34.21.  Pandering and prostitution.

E3.1.34.22.  <u>Perjury</u>.    Subornation of.

E3.1.34.23.  <u>Public record</u>.    Altering, concealing, removing, mutilating, obliterating, or destroying.

E3.1.34.24.  <u>Seizure</u>.    Destruction, removal, or disposal of property to prevent.

E3.1.34.25.  Soliciting another to commit an offense (for crimes listed).

E3.1.34.26.  <u>Stolen property</u>.    Knowingly receiving, buying, or concealing (value more than 100 dollars).

E3.1.34.27.  <u>Testify</u>.    Wrongful refusal.

E3.1.34.28.  <u>Threat or Hoax</u>.    Bomb.

E3.1.34.29.  Threat, communicating.

E3.1.34.30.  <u>Weapon</u>.    Concealed or carrying.

E3.1.35.  Any offenses under 18 U.S.C. (reference (h)), charged as a violation of Article 134, which has a maximum punishment of more than one year.

*DODI 5505.11, December 1, 1998*

# E4.  ENCLOSURE 4

## SUSPECT FINGERPRINT CARD

### E4.F1.  FD-249, "Suspect Fingerprint Card"

*DODI 5505.11, December 1, 1998*

E4.F2.  FD-249, "Suspect Fingerprint Card" (reverse) continued

| LEAVE BLANK | CRIMINAL | | (STAPLE HERE) | | | LEAVE BLANK |
|---|---|---|---|---|---|---|
| | | STATE USAGE | ☐ | ☐ | ☐ | 953050000110 |
| | | NFF SECOND | | | | |
| | | SUBMISSION | APPROXIMATE CLASS | AMPUTATION | SCAR | |

STATE USAGE

LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX

| SIGNATURE OF PERSON FINGERPRINTED | | SOCIAL SECURITY NO. | LEAVE BLANK |
|---|---|---|---|

ALIASES/MAIDEN
LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX

| FBI NO. | STATE IDENTIFICATION NO. | DATE OF BIRTH | MM | DD | YY | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|---|---|---|---|---|

| 1. R. THUMB | 2. R. INDEX | 3. R. MIDDLE | 4. R. RING | 5. R. LITTLE |
|---|---|---|---|---|

| 6. L. THUMB | 7. L. INDEX | 8. L. MIDDLE | 9. L. RING | 10. L. LITTLE |
|---|---|---|---|---|

| LEFT FOUR FINGERS TAKEN SIMULTANEOUSLY | L. THUMB | R. THUMB | RIGHT FOUR FINGERS TAKEN SIMULTANEOUSLY |
|---|---|---|---|

ENCLOSURE 4

*DODI 5505.11, December 1, 1998*

# E5.  ENCLOSURE 5

## FINAL DISPOSITION REPORT

### E5.F1.  FBI/DOJ Form R-84, "Final Dispostion Report,"

*DODI 5505.11, December 1, 1998*

### E5.F2.  FBI/DOJ Form R-84, "Final Dispostion Report," (reverse) continued

**INSTRUCTIONS**

1. The purpose of this report is to record the initial date of an individual's arrest and thereafter secure the final disposition of the arrest at the earliest possible time from either the arresting agency, the prosecutor or the court having jurisdiction. (INTERIM DISPOSITION INFORMATION, e.g., RELEASED ON BOND, SHOULD NOT BE SUBMITTED.) The SUBJECT'S NAME, CONTRIBUTOR AND ARREST NUMBER should be exactly the same as they appear on the fingerprint card in THE FILES OF THE FBI. The FBI number should be indicated, if known. Agency ultimately making disposition will complete and mail form to: FBI Identification Division, Washington, D.C. 20537.

2. The arresting agency should fill in at arrest date on left side of form and obtain the finger impressions of the right four fingers simultaneously. This should be done at the same time as the full set of fingerprints are taken on the arrest fingerprint card. If the arrest is disposed of by the arresting agency, as where the arrestee is released without charge, then the arresting agency should fill in this final disposition and mail form to FBI Identification Division. Of course, if final disposition is known when arrest fingerprint card is submitted it should be noted thereon and this form is unnecessary. In the event the case goes to the prosecutor, this form should be forwarded to the prosecutor with arrestee's case file.

3. The prosecutor should complete the form to show final disposition at the prosecution level if the matter is not being referred for court action and thereafter submit form directly to FBI Identification Division. If court action required, the prosecutor should forward form with case file to court having jurisdiction.

4. The court should complete this form as to final court disposition such as when arrested person is acquitted, case is dismissed, on conviction and when sentence imposed or sentence suspended and person placed on probation.

5. When arrested person convicted or enters guilty plea to lesser or different offense than that charged when originally arrested, this information should be clearly indicated.

6. If subsequent action taken to seal or expunge record, attach certified or authenticated copy of court order to this form so that FBI can return arrest fingerprints to original contributor.

7. It is vitally important for completion of subject's record in the FBI Identification Division files that Final Disposition Report be submitted in every instance where fingerprints previously forwarded without final disposition noted thereon.

**FOR ADDITIONAL INFORMATION**

GPO : 1992 O - 366--70

Exhibit C

**Army Regulation 195–2**

Criminal Investigation

# Criminal Investigation Activities

**Headquarters**
**Department of the Army**
**Washington, DC**
**30 October 1985**

**Unclassified**

# SUMMARY of CHANGE

AR 195-2
Criminal Investigation Activities

Headquarters
Department of the Army
Washington, DC
30 October 1985

*Army Regulation 195–2

Effective 30 October 1985

Criminal Investigation

# Criminal Investigation Activities

By Order of the Secretary of the Army:

JOHN A. WICKHAM, JR
*General, United States Army*
*Chief of Staff*

Official:

MILDRED E. HEDBERG
*Brigadier General, United States Army*
*The Adjutant General*

**History.** This UPDATE printing publishes a revision which is effective 30 October 1985. Because the structure of the entire revised text has been reorganized, no attempt has been made to highlight changes from the earlier regulation dated 6 May 1977.

**Summary.** This regulation covers Department of the Army policy on criminal investigation activities, including the utililzation, control, and investigative responsibilities of all personnel assigned to CID elements. It also delineates responsibility and authority between Military Police (MP) and The United States Army Criminal Investigation Command (USACIDC).

**Applicability.** This regulation applies to the Active Army and the U.S. Army Reserve (USAR). It applies to the Army National Guard (ARNG) when in active Federal service.

**Proponent and exception authority.** Not applicable

**Impact on New Manning System.** This regulation does not contain information that affects the New Manning System.

**Army management control process.**

**Supplementation.** Supplementation of this regulation and establishment of forms other than DA Forms are prohibited without prior approval from the Commander, United States Army Criminal Investigation Command, ATTN: CIPP–PD, 5611 Columbia Pike, Falls Church, VA 22041–5015.

**Interim changes.** Interim changes to this regulation are not official unless they are authenticated by The Adjutant General. Users will destroy interim changes on their expiration date unless sooner superseded or rescinded.

**Suggested Improvements.** The proponent agency for this regulation is the Office of the Deputy Chief of Staff for Personnel. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to HQDA (DAPE–HRE–PO), Washington, DC 20310.

**Distribution.** Active Army, A; USAR, A; ARNG, D.

## Contents (Listed by paragraph and page number)

**Chapter 1**
**General,** *page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Investigative policies • 1–5, *page 1*

**Chapter 2**
**USACIDC Organization,** *page 3*
General • 2–1, *page 3*
CID support to the Army in the field • 2–2, *page 3*

**Chapter 3**
**Criminal Investigation Activities,** *page 3*

*Section I*
*General, page 3*
Investigative authority of the Army • 3–1, *page 3*
USACIDC investigative responsibility • 3–2, *page 3*
Investigative responsibility of the USACIDC and military police • 3–3, *page 3*
Assumption of investigative responsibility by the USACIDC • 3–4, *page 4*

Agreements between the USACIDC and provost marshals or security elements • 3–5, *page 4*
Referral of investigations • 3–6, *page 4*
Army Alcohol and Drug Abuse Prevention and Control Program (ADAPCP) • 3–7, *page 4*
Self-admitted homosexuality • 3–8, *page 4*
Customs and postal matters • 3–9, *page 4*

*Section II*
*Crime Prevention Surveys and Protective Services, page 4*
Crime prevention surveys • 3–10, *page 4*
Protective services • 3–11, *page 4*

*Section III*
*Operational Considerations, page 5*
Freedom of movement • 3–12, *page 5*
Crime scenes • 3–13, *page 5*
Coordination • 3–14, *page 5*
Access to Army facilities and records • 3–15, *page 5*
Security clearances and special background investigations • 3–16, *page 5*
CID use of the National Crime Information Center (NCIC) • 3–17, *page 5*
Warning of rights • 3–18, *page 6*

*Section IV*
*CID Special Agents, page 6*

* This regulation supersedes AR 195–2, 6 May 1977; and rescinds DA Form 2800, January 1976, and DA Form 4733 (Test), November 1978.

# Unclassified

**Contents—Continued**

General • 3–19, *page 6*
Utilization • 3–20, *page 6*
Authority to apprehend or detain • 3–21, *page 6*
Authority to search and seize • 3–22, *page 6*
Authority to administer oaths • 3–23, *page 6*
Firearms • 3–24, *page 6*
Civilian clothing • 3–25, *page 6*
Billets and messes • 3–26, *page 6*
Disclosure of grade • 3–27, *page 7*
Retention and use of investigative property • 3–28, *page 7*
Standards of conduct • 3–29, *page 7*

*Section V*
*USACIDC Drug Suppression Operations in Foreign Countries,*
  *page 7*
Purpose • 3–30, *page 7*
Definitions • 3–31, *page 7*
Policy considerations • 3–32, *page 7*
Approvals and coordinations • 3–33, *page 8*

**Chapter 4**
**Investigative Records, Files, and Reports,** *page 8*
Policy • 4–1, *page 8*
Preparation and maintenance • 4–2, *page 8*
Release and use of information • 4–3, *page 8*
Individual requests for access to or amendment of CID reports of
  investigation • 4–4, *page 9*

**Chapter 5**
**Crime Records Center, USACIDC,** *page 9*
General • 5–1, *page 9*
Functions • 5–2, *page 10*
Routine investigative name checks • 5–3, *page 10*
Immediate name checks • 5–4, *page 10*
Requesting Crime Records Center files and reports • 5–5, *page 10*
Use of information contained in CID and MP reports • 5–6,
  *page 10*

**Chapter 6**
**U.S. Army Criminal Investigation Laboratories,** *page 11*
General • 6–1, *page 11*
Responsibilities • 6–2, *page 11*
Request for examination • 6–3, *page 11*
Court appearance • 6–4, *page 11*
On scene assistance • 6–5, *page 11*

**Appendixes**

**A.**  References, *page 12*

**B.**  Offenses within CID Investigative Responsibility, *page 13*

**C.**  Preparation of DA Report of Investigation, *page 14*

**E.**  Preparation of the DA Form 2804, Crime Records Data
    Reference, *page 14*

**F.**  Telephone Name Check Format, *page 16*

**G.**  Sensitive Items, *page 17*

**Glossary**

# Chapter 1
# General

## 1–1. Purpose
This regulation—

a. Prescribes Department of the Army policy on criminal investigation activities, including the utilization, control, and investigative authority and responsibilities of all personnel assigned to criminal investigation (CID) elements.

b. Constitutes the basic authority for the conduct of criminal investigations, crime prevention surveys, protective service missions, and the collection, retention, and dissemination of criminal information.

c. Delineates responsibility and authority between military police and the U.S. Army Criminal Investigation Command (USACIDC).

## 1–2. References
Required and related publications are listed in appendix A.

## 1–3. Explanation of abbreviations and terms
Abbreviations and special terms used in this regulation are explained in the glossary.

## 1–4. Responsibilities
a. The Commanding General, USACIDC, will—

(1) Establish policies for the release of information from, and the amendment of, criminal investigation records and reports of investigations.

(2) Evaluate Army law enforcement polygraph program activities and provide membership on DOD polygraph committees.

(3) Maintain overall responsibility for Army investigations of offenses involving "controlled substances" as defined in 21 U.S.C. 812.

(4) Plan for and provide CID support for each contingency plan maintained by HQDA and its subordinate commands. Plans for criminal investigative support will be coordinated with the commander responsible for the overall contingency plan.

b. The Commanding General, U.S. Army Training and Doctrinal Command (TRADOC) is responsible for the formal training of USACIDC personnel at TRADOC schools as necessary to meet the requirements of USACIDC.

c. The Commanding General, U.S. Army Materiel Command (AMC) is responsible for the formal training of USACIDC personnel at AMC schools as necessary to meet the requirements of USACIDC.

d. Within their respective areas of responsibilities, major Army commanders and subordinate commanders will support the Army CID program by providing facilities and support required by the USACIDC mission and authorized by applicable regulations or memoranda of understanding to assist the USACIDC in meeting the criminal investigative, crime prevention, and protective service requirements of subordinate commands, installations, and other supported Army activities.

e. CID elements at all levels will provide statistical data to supported commands relative to the number and types of serious crimes and incidents investigated, subjects identified, value of property stolen or recovered, and other information reflecting the status of discipline, law, and order necessary for the completion of reports required by HQDA (e.g., DA Form 2819, Law Enforcement and Discipline Report). Statistical data necessary to support locally established reports may be provided within the administrative and record keeping capabilities of the supporting CID element.

f. Commanders or supervisors receiving CID reports for action will take the following actions:

(1) Commanders or supervisors receiving action copies of final CID Reports of Investigation (ROI) pertaining to a member of their organization are required to—

(a) Reply within 60 days through local command channels (using DA Form 4833, Commander's Report of Disciplinary or Administrative Action), to the USACIDC element preparing the ROI, indicating the judicial, nonjudicial, or administrative action, or lack thereof, taken against persons listed in the title block of the final ROI who are under their supervision or command. Changes to judicial, nonjudicial, or administrative action resulting from subsequent appellate action will also be reported by commanders and supervisors to the USACIDC. The report of action taken is necessasry to ensure completion of investigative files and to protect the rights of individuals involved.

(b) Notify all persons listed in the title block, who have no action taken against them, that their name will remain in the title block of the report and that the report will be indexed, and, therefore, retrievable by their name. Individuals will also be informed of the purposes for which the reports are used (e.g., other criminal investigations, security clearances, other purposes as authorized by the Privacy Act and AR 340–21) and the fact that such use may have an impact upon their military or civilian careers. Individuals will be informed also that the removal of their name from the title block or other amendment of the report may be accomplished only by submitting a written request to the Director, U.S. Army Crime Records Center, 2301 Chesapeake Ave, Baltimore, MD 21222–4099. Requests for amendment will be considered only as set forth in paragraph 4–4.

(2) Commanders or supervisors of activities, facilities, units, or installations who have received a crime prevention survey by the USACIDC will furnish a report of corrective action taken or a statement that no corrective action was taken as a result of the survey. This report of corrective action must be forwarded by the commanders or supervisors through local command channels to the commander two levels above the activity, unit, facility, or installation surveyed within 90 days of the date of the survey, but in no case will reports be forwarded above MACOM level. An information copy of the corrective actions will be provided the appropriate USACIDC field element within 90 days of the date of the survey. A report of corrective action is not required for crime prevention survey when—

(a) Requested by the commanders or supervisors of activities, facilities, units, or installations.

(b) Conducted in support of a crime prevention program.

(c) Crime conducive conditions are not identified.

## 1–5. Investigative policies
a. The USACIDC is the sole agency within the United States Army responsible for the investigation of felonies, except as otherwise prescribed in this regulation and AR 190–30. USACIDC directives and policies as they relate to criminal investigation activities will be followed by all CID personnel and elements throughout the United States Army.

b. Offenses will be reported as follows:

(1) Commanders will ensure that criminal incidents or allegations in the Army affecting or involving persons subject to the Uniform Code of Military Justice, civilian employees of the Department of Defense if related to their assigned duties or position, government property under Army jurisdiction, or those incidents occurring in areas under Army control are reported to military police or security police in accordance with AR 210–10, paragraph 2–19. Information indicating a violation of AR 600–50 or the Federal Acquisition Regulation (FAR) that develops into possible criminal activity will also be reported to the military police or security police.

(2) Barracks larcenies of property of a value of less than $1,000 and simple assaults occurring in unit areas and not resulting in hospitalization will be reported to law enforcement activities for statistical and crime reporting purposes, but a law enforcement investigation is not required. Unit commanders will take appropriate action on these incidents. A law enforcement investigation will normally be conducted only when it is considered necessary by the provost marshal or security officer; commander, CID element; or when requested by a field grade commander in the chain of command of the unit concerned. Nothing in this regulation will be

construed to allow the withholding of medical treatment to avoid MP or CID involvement.

*c.* Military police and security police will promptly refer all crimes or incidents falling within CID investigative responsibility to the appropriate CID element for investigation. Initially, notification will normally be accomplished by direct contact between the military police or security police desk sergeant and the supporting CID unit. Formal referral will be by DA Form 3975, Military Police Report. This form will also be used by the USACIDC to report acceptance or declination of the investigation.

*d.* Commanders of installations or activities without assigned military police or security police will report criminal incidents or allegations to the supporting USACIDC element or the supporting military police or security police as appropriate.

*e.* The USACIDC will determine appropriate investigative action in accordance with this regulation for all criminal incidents or allegations reported to it or developed through its own sources. Necessary reports will be prepared reflecting the results thereof.

*f.* The USACIDC element receiving reports of criminal incidents or allegations from other than military police or security police will notify the appropriate provost marshal or security officer of the incident, unless such notification will compromise the investigation. (See para 3–14.)

*g.* Title 28, U.S.C., Section 535, requires that any information, allegation, or complaint relating to violations of title 18, U.S. Code, involving Government officials and employees will be reported expeditiously to the Department of Justice, unless the responsibility to investigate the matter is conferred upon the DOD (e.g., an offense under the Uniform Code of Military Justice (UCMJ)) or as otherwise provided by law or agreement with the Attorney General (e.g., the DOD/DOJ Memorandum of Understanding).

(1) For violations in the United States, the normal method of referral and consultation with the appropriate Department Of Justice agency (e.g., FBI, U.S. Attorney) on all such violations involving either military or civilian personnel established pursuant to AR 27–10, chapter 2, will suffice and should be used.

(2) In the case of overseas violations or loss or injury to the United States that affect Armed Forces activities, and which involve any civilian as a suspect or subject, whether or not such person is a DOD employee (e.g., a defense contractor), a full report on the nature and apparent scope of the violation, loss, or injury will be provided through USACIDC channels. Headquarters, USACIDC, will notify DOJ through DAJA–LT as appropriate. A prompt initial notification should be submitted through USACIDC channels in all instances involving bribery or conflict of interest and in those instances of fraud, theft, and unlawful destruction of Government property when the loss to the United States exceeds or is expected to exceed $1,000.

*h.* Information concerning purely political activities and personalities, or disorders in which no crime is indicated or suspected will not be collected, recorded or reported by the USACIDC.

*i.* Continuous criminal investigation-military intelligence liaison will be maintained. Information concerning an offense or incident involving any person having access to classified defense information will be expeditiously provided to the proper military intelligence (MI) representative. Similarly, in accordance with AR 381–10 and AR 381–20, MI components are obliged to expeditiously report criminal information to the appropriate military law enforcement authority. Certain intelligence-related crimes such as actual or alleged espionage, treason, or sedition may present situations where MI and CID have concurrent investigative jurisdiction. The primary responsibility of MI is to investigate such incidents for intelligence and security-related purposes. CID shares the responsibility to investigate the incident for the purpose of reporting crime within Army investigative jurisdiction. The lead agency concept will be employed, based on coordination with the proper MI component, to determine the agency to undertake primary investigative responsibility. Generally, MI will take the investigative lead to first exhaust all intelligence or security dimensions of an incident before investigation for possible criminal prosecution is initiated. In situations such

as known or suspected sabotage, when immediate evaluation of a crime scene is of paramount importance, the USACIDC should take the investigative lead.

*j.* The receiving USACIDC element will refer information related to systemic weaknesses or managerial deficiencies not of a criminal nature to the appropriate Inspector General office, in accordance with AR 20–1, appendix D.

*k.* Criminal information will be handled as follows:

(1) The USACIDC has primary responsibility to operate a criminal information program. The program will be designed to obtain, record, process, and disseminate information concerning criminal activities directed against, involving, or affecting U.S. Army operations, material or personnel. The program will also develop, analyze, and report on the methods of operations used in criminal activities and assess the vulnerability of Army activities to crime. The focus of the criminal information program will be the detection, analysis, and prevention of criminal activity affecting the Army. Information gathered may be factual, fragmentary, or unsubstantiated.

(2) The USACIDC criminal investigation information gathering activities are not "counter-intelligence related" and are excluded from the provisions of AR 380–13. AR 380–13 restrictions are applicable to any information acquired through criminal investigations or criminal investigation activities which is not related to law enforcement or crime prevention. Criminal information files will be maintained and reviewed in accordance with AR 380–18. Safeguards will be established to preclude unauthorized release of information.

(3) CID units will ensure that within their area of responsibility there is close coordination and mutual exchange of criminal information between their unit and other military and civilian law enforcement agencies on matters of common interest. Source confidentiality will be maintained.

(4) In no case will criminal information be restricted to CID channels when that information provides strong indications that an offense is imminent and the commission of that offense will affect the safety or security of U.S. Army operations, personnel or material. Release will be made only to the extent necessary to prevent the commission of the offense.

(5) Information concerning criminal activity of interest to U.S. Government agencies other than the Department of Defense and other law enforcement agencies will be reported to the appropriate agency. In overseas areas where representatives of other Federal investigative agencies are not present, information of interest to those agencies will be forwarded to the Commander, USACIDC, ATTN: CIOP–ZA, 5611 Columbia Pike, Falls Church, VA 22041–5015 for appropriate dissemination. All releases of information under this provision will be in accordance with AR 340–21.

(6) Criminal information about an individual may be disseminated outside law enforcement channels only to those persons whose official duties create a definite and identifiable need for them to have access. Dissemination will be made to the minimum number of persons possible. All releases of information under this provision will be in accordance with AR 340–21.

*l.* The contents of Army investigative files will be restricted to information that is necessary and relevant to authorized criminal investigation and law enforcement information gathering activities.

*m.* Collateral reports of investigations (transmitting reports of criminal investigations received from civilian agencies) pertaining to offenses within USACIDC's normal investigative responsibility will be forwarded by provost marshals or security officers in accordance with AR 190–45 to the U.S. Army Crime Records Center. An information copy of the DA Form 3975, with the civilian police report as an enclosure, will be provided to the supporting CID element to ensure the receipt of criminal information. When the overall interests of the Army would be best served, the USACIDC may assume collateral reporting responsibility for any particular off-post investigation by notifying the appropriate provost marshal or security officer.

*n.* All requests for USACIDC elements to become involved in missions or tasks not enumerated in AR 10–23 or this regulation

will be referred to the Commanding General, USACIDC, ATTN: CIOP–ZA.

# Chapter 2
# USACIDC Organization

## 2–1. General

*a.* The USACIDC is a major Army command of the Department of the Army. (See AR 10–5 and AR 10–23.) It is composed of a command headquarters, forensic laboratories, the U.S. Army Crime Records Center, the U.S. Army Protective Services Activity, and worldwide field investigative units.

*b.* In non-tactical situations, each USACIDC unit is normally a tenant activity at an Army installation, providing investigative support to the installation commander as well as to the commanders of all other Army elements located within a USACIDC specified geographic area of responsibility. The commander or special agent-in-charge at each unit provides advice and guidance on all CID matters to supported commanders and provost marshals or security officers.

## 2–2. CID support to the Army in the field

*a.* During tactical operations and field exercises and in active theaters of operation, the Commanding General, USACIDC, will provide CID support to tactical units and their supporting elements under one of the following options:

(1) *General support.* CID support is provided to the supported force in a given geographic area by CID elements under command and control of a USACIDC headquarters.

(2) *Direct support.* CID support is provided by a USACIDC element on a dedicated support basis to the supported organization, although the CID element is neither attached to nor under the command or control of the supported organization.

(3) *Attachment.* USACIDC elements are temporarily placed under the command and control of the supported commander. Reassignment, promotion, and accreditation responsibilities are retained by the USACIDC.

*b.* The selection of the method of support will be coordinated between the appropriate USACIDC headquarters and the headquarters planning for the contingency or operation. Final approval concerning the attachment of USACIDC elements rests with the Commanding General, USACIDC. The commander of the supported tactical force will provide necessary logistical and administrative support to CID elements when attached or in direct support.

*c.* Regardless of the support option selected, criminal investigations will be conducted, prepared, administered, reported, and distributed in accordance with AR 10–23, AR 195–1, appropriate provisions of this regulation, and applicable USACIDC regulations and directives.

# Chapter 3
# Criminal Investigation Activities

## Section I
## General

## 3–1. Investigative authority of the Army

*a.* Investigative authority refers to matters concerning which the Army has the legal authority (jurisdiction) to conduct a criminal investigation. Investigative responsibility refers to those matters within the Army's overall investigative authority which the USACIDC has responsibility to ensure are properly investigated.

*b.* The Army has investigative authority whenever an Army interest exists and investigative authority has not been specifically reserved to another agency (see para 3–6 below; AR 20–1,app D; and the Memorandum of Understanding between the Department of Defense and the Department of Justice relating to the investigation and prosecution of certain crimes). Generally, an Army interest exists when one or more of the following apply:

(1) The crime is committed on a military installation or facility.

(2) There is a reasonable basis to believe that a suspect may be subject to the UCMJ.

(3) There is a reasonable basis to believe that a suspect may be a civilian employee of DOD who has committed an offense in connection with his or her assigned duties.

(4) The Army is the victim of the crime; e.g., the offense involves the loss or destruction of government property or allegations of fraud (as defined in DOD instructions concerning the criminal investigation of fraud offenses) relating to Army programs or personnel.

(5) There is a need to protect personnel, property, or activities on Army installations from criminal conduct on military installations that has a direct adverse effect on the Army's ability to accomplish its mission; e.g., the introduction of controlled substances onto Army installations.

## 3–2. USACIDC investigative responsibility

*a.* Inside CONUS, Alaska, and Hawaii, the USACIDC will normally exercise investigative responsibility for those offenses listed in appendix B and which are within the Army's investigative authority. However, when Federal, State, or local civil law enforcement authorities have concurrent jurisdiction, investigative responsibility will be determined in coordination with that authority. When concurrent jurisdiction or authority to investigate exists and neither the Army nor the civil authorities accede to the other's primary responsibility to investigate, both may pursue the investigation in fulfillment of their respective interests, with neither impeding the other.

*b.* Outside CONUS, the USACIDC will normally have investigative responsibility for those offenses listed in appendix B which are also within the Army's investigative authority, and when investigation would not be prohibited by status of forces agreements or other host country laws. In the absence of any agreement, the USACIDC will investigate offenses after coordination with appropriate host country authorities.

## 3–3. Investigative responsibility of the USACIDC and military police

*a.* The USACIDC is responsible for investigating those Army-related felonies (offenses punishable by death or confinement for more than 1 year) listed in appendix B. Exceptions to this general policy are described in paragraphs *a*(1) through (10) below and 3–4.

(1) *Property-related offenses.* The USACIDC is responsible for investigating property-related offenses when the value of the property taken, destroyed, or damage inflicted is $1,000 or more (except as listed in app B) or when the property is of a sensitive nature (app G). A preliminary investigation by the USACIDC is also required for purposes of determining criminal intent in the case of lost sensitive arms, ammunition, and explosives when the quantities involved meet the thresholds in AR 190–11, appendix A. (See AR 190–11, para 7–20,*a*(1)*(b)).* Military police are responsible for investigating property-related offenses when the value is less than $1,000. When requested by a supported commander, the USACIDC may investigate property crimes of lesser value, such as a series of minor larcenies which appears to be the work of an organized group.

(2) *Drug offenses.* The USACIDC has overall responsibility for offenses involving controlled substances. Use and possession of non-narcotic controlled substances in amounts indicative only of personal use are normally investigated by military police, whereas the USACIDC investigates use, possession, manufacture, or distribution of controlled substances classified as narcotics, and the distribution of non-narcotic controlled substances. When appropriate, the investigation by a joint CID/MP team of drug offenses on an installation is recommended. This can be accomplished with the primary investigative and reporting procedures of the military police

and CID remaining unchanged. This approach fosters better coordination and is encouraged when deemed in the best interest of the overall drug suppression effort.

(3) *Misdemeanors.* The USACIDC retains investigative responsibility for a limited number of misdemeanors due to the complex nature of the investigation required. Such offenses are reflected in appendix B.

(4) *Noncombat deaths.* The USACIDC is responsible for investigating noncombat deaths to the extent necessary to determine whether criminality is involved.

(5) *Military offenses.* Certain military offenses, such as misbehavior as a sentinel or disrespect, will not normally be investigated either by the USACIDC or the military police. However, when the significance of the incident or the complexity of the facts dictate, the USACIDC or the military police may assume investigative responsibility.

(6) *Crimes affecting Reserve Components.* Crimes in which a Reserve component is affected by fraud, theft, diversion, or destruction of United States Government funds or property may be investigated by the USACIDC. Other cases affecting a U.S. Army interest may be investigated pursuant to instructions of the Commanding General, USACIDC.

(7) *War crimes.* The USACIDC is responsible for investigating suspected war crimes when a violation of the UCMJ listed in appendix B is indicated or when otherwise directed by HQDA.

(8) *Adultery and fraternization.* When they are the only offenses involved, adultery and fraternization will not normally be investigated by either the USACIDC or military police. The offenses will be reported by military police (using DA Form 3975) through command channels to the appropriate commander.

(9) *Offenses involving senior personnel.* The USACIDC will investigate any felony offense involving senior level personnel (active duty general or flag officer, member of the Senior Executive Service (SES), or Executive Schedule personnel) as subjects without regard for the limitations imposed in appendix B. Other offenses involving these personnel as subjects may be investigated by the USACIDC if the sensitivity of the incident or complexity of the matter so dictates.

(10) *Aggravated assaults.* The USACIDC is responsible for investigating aggravated assaults which result in the victim being hospitalized for treatment (not mere observation) for a period of more than 24 hours. All other aggravated assaults will be investigated by military police.

*b.* The USACIDC may conduct a preliminary investigation as required to determine whether the USACIDC has investigative authority or responsibility or whether there is an Army interest in the matter. If the preliminary investigation reveals that one or more of the foregoing is lacking, the matter will be referred to the appropriate action agency.

### 3–4. Assumption of investigative responsibility by the USACIDC

The USACIDC may assume responsibility for investigating any criminal offense within the investigative authority on the Army when appropriate to a related investigation or to further the law enforcement or crime prevention goals of the Army. When the USACIDC assumes control of an investigation from the military police and initiates an ROI, the investigation will be carried through to conclusion by the USACIDC. Conducting a preliminary investigation does not presuppose assuming control of an investigation.

### 3–5. Agreements between the USACIDC and provost marshals or security elements

Modification of investigative responsibility by mutual agreement is not authorized at a local or MACOM level. Memoranda of understanding establishing drug suppression teams and delineating their logistical and administrative support are, however, authorized.

### 3–6. Referral of investigations

For some criminal offenses within USACIDC investigative responsibility, another agency may have primary responsibility to investigate. In such cases, the other agency will be promptly informed of the allegation and, if the other agency assumes the responsibility to investigate the case, it will be referred to that agency. The USACIDC will submit a report of investigation reflecting the referral and the results of the investigation by the other agency. If the other agency ceases the development or completion of investigative leads, the USACIDC may conduct further investigation provided the other agency presents no valid objections. If the other agency declines to investigate, the USACIDC may conduct the investigation.

### 3–7. Army Alcohol and Drug Abuse Prevention and Control Program (ADAPCP)

In compliance with the Army's ADAPCP policy, CID will investigate participants in ADAPCP for controlled substance offenses only if the offense occurred after entry into the program or if the participant had been identified as a suspect or subject prior to the time of entry into the program. Participants in ADAPCP will not be knowingly approached by CID special agents for the purpose of soliciting information about controlled substances distribution unless the participant voluntarily offers to provide such information. (See AR 600–85.)

### 3–8. Self-admitted homosexuality

When cases of self-admitted homosexuality are referred to the USACIDC, a preliminary investigation will be conducted to determine if a criminal offense has occurred after the person became subject to the UCMJ. If an offense within USACIDC investigative responsibility is substantiated, a report of investigation will be prepared. If the individual refuses to provide information concerning specific criminal sexual acts, including names, places, and dates, and no other credible information is developed, a criminal information report will be prepared reflecting the admission and any other pertinent information. The individual's commander and the local military intelligence activity will be provided this information. Self-admissions made directly to CID special agents of homosexual acts which occurred prior to the person becoming subject to the UCMJ will be similarly reported to the person's commander and the local military intelligence unit.

### 3–9. Customs and postal matters

*a.* Postal and customs authorities periodically find unauthorized material (e.g., contraband, explosives, ammunition, or unauthorized or illegal weapons) that may be property of the U.S. Government.

*b.* When requested, CID special agents or military police will receipt for such confiscated U.S. Government property. Such property will be returned to Government supply channels when no longer required for evidentiary purposes.

*c.* Recovery of weapons, ammunition, and explosives will be reported by the Army element receipting for them in accordance with AR 190–11.

*d.* The USACIDC will investigate such incidents when appropriate and in conformance with this regulation.

## Section II
## Crime Prevention Surveys and Protective Services

### 3–10. Crime prevention surveys

The USACIDC conducts crime prevention surveys to support commanders within the context of the Army Crime Prevention Program. Crime prevention surveys may be initiated by the CID element commander or may be conducted in response to a request of the supported commander.

### 3–11. Protective services

The USACIDC plans for and conducts protective service operations generally using methods, procedures, and equipment similar to those

of the United States Secret Service. When conducting such operations, USACIDC personnel will be provided logistical, administrative and personnel support from U.S. Army elements as required to accomplish its mission.

## Section III
## Operational Considerations

### 3–12. Freedom of movement

*a.* During the course of a criminal investigation, CID special agents or supervisors are authorized freedom of movement between geographical areas of responsibility.

*b.* CID personnel assigned to the USACIDC are not required to obtain specific theater clearance from oversea commanders prior to undertaking oversea travel in connection with their official duties. (See AR 1–40, para 3–2c(5)). Notification to or prior concurrence of the Department of State is, however, required prior to travel to those special areas listed in AR 1–40, appendix C. (See AR 1–40, para 3–3, for additional guidance.)

*c.* Accredited USACIDC supervisors and special agents may obtain "official" U.S. passports through their servicing military personnel officer. Item 12 of the DD Form 1056, Authorization to Apply for a 'No-Fee' Passport and/or Request for VISA, accompanying each application will show the special assignment code of "USACIDC". Item 11 may be left blank. Item 7 must show the special agent's military rank or general schedule grade.

### 3–13. Crime scenes

The control and processing of a crime scene and the collection and preservation of the evidence found thereat are the exclusive responsibilities of the CID special agent or supervisor in charge of the crime scene when the USACIDC has investigative responsibility. To prevent the possible loss or destruction of evidence, the CID special agent or supervisor in charge of the crime scene is authorized to exclude all personnel from the scene. The exercise of this authority in a particular case may be subject to the requirement to preserve human life and the requirement for continuing necessary operations and security. These should be determined in conjunction with the appropriate commander and, where applicable, local host country law enforcement authorities.

### 3–14. Coordination

*a. General.* All USACIDC elements will establish liaison with the headquarters responsible for the installation, activity, or area supported. Commanders and provost marshals or security officers will be kept informed of the status of criminal investigations and crime prevention surveys in which they have an interest. If the release of this information would prejudice the successful completion of any investigation or survey, this coordination may be delayed or withheld up to and including the level of major Army commanders. When such a release of information is withheld or delayed, the USACIDC element will inform its next higher headquarters and a higher headquarters in the chain of command of the supported commander. The withholding or delay of the release of such information to major Army command headquarters requires approval of the Commanding General, USACIDC, who will inform the Chief of Staff of the Army or the Secretary of the Army of the intention to delay or withhold the release.

*b. Other services.* The USACIDC element will notify promptly the appropriate headquarters of another military service of any known or suspected crime for which the USACIDC has investigative responsibility in which the personnel or property of the other service are involved. Upon request from the headquarters having jurisdiction over the personnel or property concerned, an investigation may be made by the USACIDC. In such crimes involving both Army personnel and personnel of another service, local coordination of the investigation with that service will be accomplished by the USACIDC element concerned.

*c. Reserve Components.* CID investigations involving members of the Army National Guard, when not federalized, will be reported to the appropriate state adjutant general. Cases involving Army Reserve personnel not on active duty for training or extended active duty at the time of the offense will be reported to the Commander, Forces Command, ATTN: Liaison Officer, 3rd Region, USACIDC, Fort Gillem, GA 30050–6000.

*d. Release of derogatory information.* Derogatory information that mentions or can be tied to particular individuals will be released only to those persons whose official duties create a definite need to have access to the information. Derogatory information will not be released outside of the Department of Defense except as authorized by regulation or statute; e.g., AR 340–21.

### 3–15. Access to Army facilities and records

*a.* CID special agents and MPI will be granted access to all Army facilities and records when necessary for criminal investigations, protective service missions, or crime prevention surveys, when access is consistant with the provisions of applicable laws governing such access.

*b.* AR 40–66 describes policy and procedures to be used by CID special agents or MPI to gain access to information in medical records when conducting official investigations. Authorization for access to information is authorization to make extracts or transcripts, for official purposes only, of specific information obtained by the custodian from medical records. The medical records will remain under the control of the records custodian who will make either the records or legible, certified copies available for judicial, non-judicial, or administrative proceedings.

### 3–16. Security clearances and special background investigations

*a.* All accredited CID special agents and supervisors are required to have a top secret clearance based on a special background investigation.

*b.* Any USACIDC personnel who have access to investigative records or files are required to have a special background investigation.

### 3–17. CID use of the National Crime Information Center (NCIC)

*a.* All USACIDC elements within CONUS will make maximum use of the NCIC. The USACIDC terminal is located at the U.S. Army Crime Records Center; however, terminals located at CONUS installations, as specified in AR 190–27, are available for use by CID personnel after coordination with the installation provost marshal or security officer concerned.

*b.* The use of the NCIC will be in accordance with AR 190–27 and the operating instructions of the FBI. The USACIDC elements using terminals located at CONUS installations will adhere to the applicable U.S. Army Forces Command (FORSCOM) or TRADOC directives. The Commanding General, USACIDC will issue appropriate instructions for use of the NCIC by USACIDC elements.

*c.* Data to be entered into the NCIC through the terminals located at CONUS installations will include information pertaining to stolen Government or private property, the theft of which is being investigated by the USACIDC and which meets the criteria established by the FBI for entry into the system. Information pertaining to absentees or deserters whose personal identifiers have already been entered by the U.S. Army Deserter Information Point (USADIP) will be entered through the USACIDC terminal at the Crime Records Center, USACIDC, if they have become suspects or subjects in a CID investigation.

*d.* The USACIDC and USADIP will establish liaison to ensure timely exchange of information on matters pertaining to absentees and deserters. The U.S. Army Crime Records Center will provide USADIP with the names of those Army deserters in whom the USACIDC has an interest. USADIP will ensure that notification of apprehension or inquiries from civil law enforcement authorities on subjects of CID investigations are transmitted to the Crime Records Center by the most expeditious means. The USACIDC will ensure that timely notification of a cancellation of interest in an absentee or

deserter previously listed in the wanted file is provided to the USADIP and entered into the NCIC immediately.

### 3–18.  Warning of rights

Prior to any questioning, all military suspects or accused persons must be given a proper warning of their rights in accordance with Article 31, UCMJ, and Military Rule of Evidence 305, Manual For Courts Martial, United States, 1984. Civilian suspects will be warned in accordance with current Federal law. This generally requires a warning of rights only in a "custodial interrogation" setting.

### Section IV
### CID Special Agents

### 3–19.  General

All USACIDC special agents are authorized to enforce the criminal laws of the United States concerning any offense over which the Army has investigative authority. Nothing in this regulation purports to authorize any action that would constitute a violation of the Posse Comitatus Act, 18 U.S.C 1385.

### 3–20.  Utilization

*a.* CID special agents will not be assigned to other than criminal investigative duties without prior approval of the Commanding General, USACIDC. CID special agents or supervisory personnel will not be assigned duties such as post or staff duty officer, military police duty officer, membership on courts or boards (except boards considering applicants for appointment as warrant officers in MOS 951 or reclassification boards requiring a member knowledgeable of duties required of CID personnel). This does not preclude the performance by CID special agents or supervisors of those additional duties assigned by and performed within the USACIDC unit.

*b.* When the interests of effective law enforcement require special expertise or technical assistance, the Commanding General, USACIDC, may authorize civilian or military personnel of the U.S. Army to assist in criminal investigations and to perform other CID related duties, to include administering oaths.

*c.* Special agents and certified polygraph examiners may perform all the requirements of their respective duty positions without regard to whether they hold a military or civilian status.

### 3–21.  Authority to apprehend or detain

*a.* Pursuant to R.C.M 302, Manual for Courts Martial, United States, 1984; UCMJ, Article 7 (10 U.S.C. 807); and AR 600–40, USACIDC accredited supervisors and special agents are authorized to apprehend any person subject to the UCMJ, regardless of location, if there is probable cause to believe that person has committed a criminal offense. All USACIDC accredited supervisors and special agents are also authorized to conduct investigative stops of any person subject to the UCMJ, regardless of location, if there is articulable and reasonable suspicion that the person has committed a criminal offense.

*b.* All USACIDC accredited supervisors and special agents are authorized to apprehend civilian personnel on military installations or facilities when there is probable cause to believe that person has committed an offense cognizable under the criminal laws of the United States. Such persons will be held only until they can be released to an appropriate Federal, State, or local law enforcement agency, or to civilian authorities in accordance with local procedures.

*c.* No USACIDC personnel, in their official capacity, have authority to arrest, with or without an arrest warrant, civilians outside the limits of a military installation. When such an arrest is necessary in the conduct of a CID investigation, an arrest warrant must be obtained and executed by a civil law enforcement officer with statutory arrest authority. CID special agents may accompany the arresting civil law enforcement official for purposes of identifying the person to be arrested and providing backup assistance.

*d.* Personnel apprehended by CID will be released to civil or military police, as appropriate, for confinement or detention. Confinement or detention in military facilities will be in accordance with AR 190–47 or AR 190–38 respectively.

*e.* Nothing in this regulation is intended to restrict the inherent authority of military commanders to maintain law and order on the installation for which they are responsible or to restrict the personal authority of special agents under various state laws concerning citizen's arrest.

### 3–22.  Authority to search and seize

*a.* Searches and seizures within the confines of a U.S. military installation will be conducted in accordance with the Military Rules of Evidence, Manual for Courts Martial, United States, 1984; AR 190–22; or other applicable law.

*b.* All USACIDC supervisors and special agents are authorized to seek a search warrant from a civil magistrate or judge, and, if issued, to execute such search warrant outside of a military installation. This authority is granted under the provisions of Rule 41, Federal Rules of Criminal Procedure, and 28 C.F.R. 60, and pertains to those offenses within the investigative authority of the Army over which the USACIDC has assumed investigative responsibility. Coordination with the supporting staff judge advocate and concurrence of the appropriate U.S. attorney are mandatory prior to seeking a civil search warrant. When executing such a search warrant, CID special agents will be accompanied by a civil law enforcement officer having statutory arrest authority.

### 3–23.  Authority to administer oaths

CID special agents, CID supervisors, and other personnel designated in accordance with paragraph 3–20*b* above are authorized to administer oaths under the provisions of UCMJ, Article 136(b)(4), and 5 U.S.C. 303, as appropriate.

### 3–24.  Firearms

*a.* CID special agents and supervisors are authorized to carry concealed weapons in accordance with instructions issued by the Commanding General, USACIDC, and AR 190–14. Any weapon lost, stolen, or unaccounted for will be reported to the Commander, U.S. Army Military Police Operating Agency (USAMPOA), in accordance with AR 190–11.

*b.* Unless authorized by the Commanding General, USACIDC, or the commander's designated representative, only government issued and acquired weapons and ammunition will be utilized. The use of personally owned weapons and ammunition for official duties (other than marksmanship activities) is prohibited.

### 3–25.  Civilian clothing

*a.* Unless precluded by theater requirements, (e.g., combat operations), or when directed otherwise by a CID unit commander, CID special agents may wear civilian clothing in the performance of their duties, to include PCS travel to a new duty station. CID supervisors may also wear civilian clothing when appropriate for mission accomplishment. Civilian clothing allowances for CID special agents may be obtained in accordance with AR 700–84.

*b.* CID special agents and supervisors may obtain non-standard spectacle frames in accordance with AR 40–63.

### 3–26.  Billets and messes

*a.* Enlisted CID special agents and laboratory examiners must be billeted with other USACIDC personnel in facilities separate from other soldiers, or they may be billeted in senior bachelor enlisted quarters (SBEQ) or bachelor officer quarters (BOQ). If a lack of suitable facilities precludes this policy, CID special agents and laboratory examiners will be provided statements of nonavailability to support claims for basic allowance for quarters (BAQ) or per diem, as appropriate.

*b.* Normally, enlisted USACIDC unit administrative personnel will be billeted with USACIDC personnel or with military police personnel. Alternate billeting arrangements may be provided when it is determined that the USACIDC mission will not be adversely affected. (See AR 210–16.)

*c.* The policy in *a* and *b* above does not apply when law enforcement personnel are billeted as a unit during combat operations, field exercises, or other training periods. Housing policy for non-law enforcement type personnel prevails during these periods.

*d.* Enlisted CID special agents will be authorized basic allowance for subsistance (BAS) under the provisions of chapter 1, part 3, DOD Military Pay and Allowances Manual.

*e.* The above provisions do not apply in overseas areas not authorized basic allowance for quarters and basic allowance for subsistance.

### 3–27.  Disclosure of grade

*a.* CID special agents conducting USACIDC investigation activities are not required to reveal their military grade or position other than as "CID Special Agent" if such disclosure might interfere with the discharge of investigative duties. Their status as members of the U.S. Army or as a CID special agent may also be concealed if such concealment is in the interest of effective law enforcement.

*b.* CID special agents will include their military grade in signing all correspondence except CID reports of investigation and documents related thereto.

*c.* CID special agents may wear the "U.S." insignia in lieu of insignia of rank when wearing field uniforms.

### 3–28.  Retention and use of investigative property

Reports of investigation, files, photographs, exhibits, handwritten notes, sketches, and other material pertaining to USACIDC duties, including copies, negatives, and reproductions, are either the property of the Department of the Army or in its custody and will not be retained or used as personal property. Photographs taken during the conduct of criminal investigations or related duties are exempt from the requirements of AR 108–2.

### 3–29.  Standards of conduct

Standards of conduct for DA personnel are in AR 600–50 and will apply to all personnel in the Army CID program. Additional restrictions on off-duty employment of personnel assigned to the USACIDC may be determined by the Commanding General, USACIDC.

### Section V
### USACIDC Drug Suppression Operations in Foreign Countries

### 3–30.  Purpose

This section sets forth Army policy for all USACIDC drug suppression operations conducted outside the United States and its possessions. It applies to all levels of drug suppression operations, whether conducted on or off a military installation and whether or not conducted in conjunction with other U.S. or non-U.S. law enforcement agencies.

### 3–31.  Definitions

*a.* Level one operations are those operations conducted only in overseas areas and using agents in a covert role. They are intended to identify high level traffickers of narcotics and dangerous drugs and to intercept controlled substances destined for resale and/or use by U.S. Forces personnel.

*b.* Level two operations are those drug suppression operations conducted by special agents assigned to local CID units and drug suppression team personnel operating in a semi-covert capacity with the mission of identifying traffickers, wholesale or retail, who operate on or close to installations or areas where U.S. Forces personnel are stationed and/or who sell directly to U.S. Forces personnel.

*c.* Level three operations are those drug suppression operations conducted by special agents assigned to the local CID unit who operate in an overt manner investigating reported or detected controlled substance violations by Army and/or other U.S. Forces personnel. Level three operations are also conducted by MP/MPI assigned to the provost marshal or security officer.

*d.* The term U.S. Forces personnel includes all employees, military or civilian, of the Department of Defense and the dependents of such persons, except where the term is more narrowly defined by provision of applicable treaties or international agreements, in which case that definition will apply.

### 3–32.  Policy considerations

Individuals in charge of USACIDC drug suppression operations and the approving authorities set forth in paragraph 3–33 below will ensure that all operations are conducted in accordance with the following policy considerations.

*a.* The objective of USACIDC drug suppression operations is to support Army commanders by limiting the use or possession of illegal drugs by U.S. Forces personnel and by interdicting the supply of illegal drugs directed to such persons. Drug suppression operations will be conducted only to the extent necessary to achieve this objective and only when resources from other U.S. and non-U.S. law enforcement agencies are not available or cannot be used due to prevailing operational conditions or necessities. A particular drug operation should not be conducted unless there is an identifiable connection between the drug traffickers being investigated and U.S. Forces personnel. Such connection is present only if the traffickers are known or suspected to have had recent drug transactions with U.S. Forces personnel or if the traffickers distribute in an area where experience indicates a substantial portion of the available drug supply is obtained by U.S. Forces personnel. The general scope of drug suppression operations should be coordinated with the supporting staff judge advocate when the operation may have significant impact on non-military personnel.

*b.* Level one operations will be conducted only as necessary in light of the following factors:

(1) The connection of the drug trafficking activities and lines of distribution to the supply of illegal drugs available to U.S. Forces personnel.

(2) The resources available to the USACIDC to support the operation.

(3) The political effect of a refusal to support a foreign government in a combined operation that has an impact on U.S. Forces.

(4) The effect on relations with foreign law enforcement agencies of providing or failing to provide requested assistance.

(5) The potential effect on U.S. Forces should the drug trafficker be successful despite efforts of foreign law enforcement agencies or other U.S. law enforcement agencies.

*c.* Level one and, to a lesser extent, level two operations can adversely impact on U.S. relations with other countries. Hence, diplomatic and political considerations must always be taken into account. Questions as to the foreign relations impact of drug suppression operations should be referred to the U.S. Embassy Narcotics Coordinator as set forth in paragraph 3–33*c* below.

*d.* To the extent necessary to accomplish the drug suppression objective stated in paragraph *a* above, the USACIDC should maintain relations with other U.S. and non-U.S. police organizations and participate in the exchange of law enforcement information and support to assist investigative goals.

*e.* All drug enforcement operations in foreign countries will be conducted in accordance with the provisions of status-of-forces agreements or other applicable international agreements.

*f.* The USACIDC drug suppression operations overseas represent an effort to counter a significant threat to the health, welfare, morale, and readiness of the Army. In view of the significant Army interest involved, USACIDC narcotics control efforts are generally within the usual status-of-forces arrangements. However, if any USACIDC investigative activity is outside the authority of such provisions (e.g., a host country law enforcement agency requests USACIDC interpreter assistance in a narcotics case having no military interest) the International Narcotics Control Section of the Foreign Assistance Act of 1961 applies. Therefore, when the action to be taken is not within a status-of-forces arrangement, no USACIDC or other Army personnel or employee may "engage or participate in any direct police arrest action in any foreign country" or "interrogate or be present during the interrogation of any United States

person arrested in a foreign country with respect to narcotics control efforts without the written consent of such person" (22 U.S.C. 2291(c)).

### 3–33. Approvals and coordinations

All USACIDC drug suppression operations will be conducted in accordance with the following provisions:

a. *Major U.S. commanders.* All levels of operations will be subject to any limits imposed by the major U.S. commander being supported. Outside the Federal Republic of Germany, major U.S. commanders must approve all level one operations on a case-by-case basis. The USACIDC region commander must obtain this approval prior to seeking DA or DOD approval.

b. *Department of the Army and Department of Defense (DA and DOD).* All level one operations outside the Federal Republic of Germany will be approved on a case-by-case basis by DA and DOD. Requests for approval should be forwarded through command channels to the Office of the Army General Counsel. DA and DOD approval is also necessary prior to the initial commencement of level two operations in a country, except for countries where a division-size force or larger is stationed, a status of forces agreement is in effect, the concurrence of an appropriate agency in the host country is obtained, and a major drug problem exists with U.S. Forces personnel. In all cases approved by DA and DOD, the USACIDC will provide periodic follow-up reports explaining the extent and results of off-post activities and all other significant aspects of the approved operations.

c. *Embassy Narcotics Coordinators.* The general scope of all levels of operations in a foreign country must be fully coordinated with the Drug Enforcement Administration (DEA) representative and approved by the U.S. Embassy Narcotics Coordinator to ensure compliance with Embassy policy. In addition, prior case-by-case approval by the Embassy Narcotics Coordinator is required for all level one operations outside the Federal Republic of Germany. Approval in individual cases will be obtained by the USACIDC region commander before seeking DA and DOD approval. In approving cases, the Embassy Narcotics Coordinator will confirm with the DEA representative that DEA is unable to provide necessary investigative resources. The Embassy Narcotics Coordinator should be contacted regarding level two or three operations if it appears at any time before or during an operation that the operation may adversely affect U.S. foreign relations.

d. *Foreign governments.* Level one and significant off-post level two operations will be conducted only if and to the extent requested by the host country police agency and with the knowledge and concurrence of an appropriate agency in the government of that country. However, in countries where an agreement giving prior approval to such operations is in effect, the operations may be conducted as prescribed by the agreement.

## Chapter 4
## Investigative Records, Files, and Reports

### 4–1. Policy

Investigative records, files, and reports will be prepared, maintained, and released by USACIDC elements as prescribed by AR 340–17, AR 340–18, AR 340–21, this regulation, and other applicable laws, regulations or directives.

### 4–2. Preparation and maintenance

a. *Policies and procedures.* The Commanding General, USACIDC, will establish policies and procedures for the preparation and maintenance of investigative records and reports as prescribed in this and other applicable regulations.

b. *Investigative forms.* This regulation is the prescribing directive for DA Form 2804, Crime Records Data Reference. This form will be utilized as an index card for subjects, suspects, and victims of each CID report of investigation, for subjects of MPI reports of investigations, and for subjects of military police reports forwarded to the Director, U.S. Army Crime Records Center, for file. See appendix E for instructions on completing this form.

c. *Investigative files.*

(1) The Commanding General, USACIDC, will establish policies and procedures for the transmittal and maintenance of CID investigative records and reports; recommend to DA, The Adjutant General Center, standards for the retention of this material; direct the conduct of special studies and research utilizing data contained therein; and determine the releasability of information in these files.

(2) The Commanding General, USACIDC, in coordination with the Deputy Chief of Staff for Personnel, will recommend to DA, The Adjutant General Center, standards for the retention of selected MPI ROI and military police reports submitted to the Crime Records Center in accordance with AR 190–45 and for the release of information therefrom.

d. *Requirements control.* USACIDC and MPI investigative reports are exempt from requirements control under AR 335–15, paragraph 5–2*b*(6).

e. *Classification and safeguards.*

(1) USACIDC investigative records and reports will be marked "FOR OFFICIAL USE ONLY" (FOUO) in accordance with AR 340–17. USACIDC investigative records and reports are exempt from automatic termination of protective marking. However, when investigative records and reports, or portions thereof, are inserted in or attached to a record of trial by court-martial or released outside DOD, the FOUO markings will be automatically cancelled. When the records or reports contain national defense information, classifying and handling will be in accordance with AR 380–5.

(2) Access to CID reports will be limited to those individuals whose official duties require them to have access to such reports and should be restricted to the minimum number of persons necessary.

(3) Reports procured from USACIDC elements or the Crime Records Center when not under personal control of an authorized individual will be stored in a locked room, file cabinet, desk, shelf-file, or under other conditions which furnish an equivalent or greater degree of physical security.

(4) Reports provided by the USACIDC will be destroyed by the requesting agency upon completion of the action for which requested. As a minimum, all CID reports will be destroyed following procedures for FOUO material as described in AR 340–17. If the report contains a higher classification, destruction procedures for that classification will be followed.

### 4–3. Release and use of information

a. *Release of investigative information.* "Release of investigative information" includes any visual access, oral disclosure, explanation of contents, or reproduction of material in investigative records, reports, or related documents of USACIDC origin.

b. *Release of USACIDC investigative records and reports of investigation.* Release is authorized when it conforms with this regulation, AR 40–2, AR 190–45, AR 195–6, AR 340–17, AR 340–21, and policy on external agency information, as applicable.

c. *Distribution.* Routine distribution for final CID and MPI reports of investigation will be as follows:

(1) Routine distribution within DOD, but external to USACIDC, of final CID reports of investigation will be through the next higher field grade commander to the commander responsible for initiation of disciplinary or corrective action. Copies will also be provided to the staff judge advocate supporting the action commander, the provost marshal or security officer responsible for law enforcement in the area in which the incident occurred, and as further directed by the Commanding General, USACIDC.

(2) Routine distribution within DOD, but external to military police, of final MPI reports of investigation will be in accordance with AR 190–45.

(3) Disclosures outside DA, under the authority of this paragraph, must be accounted for in accordance with appropriate USACIDC and MP regulations.

d. *Law enforcement criminal information exchange.*

(1) Disclosure of criminal information originated or maintained by the USACIDC may be made to any Federal, State, local, or foreign law enforcement agency that has an investigative or law enforcement interest in the matter disclosed, provided the disclosure is not in contravention of any law, regulation, or directive, as applied to law enforcement activities. Disclosures under this paragraph to a non-DOD law enforcement element is a routine use under the Privacy Act and must be accounted for in accordance with AR 340–21, chapter 3.

(2) Acquisition of criminal information from Federal, State, local, or foreign law enforcement agencies is authorized provided it relates to a matter within USACIDC investigative authority or responsibility. Criminal information may be acquired for the purpose of determining whether it meets the criteria of this paragraph, but will not be retained if determined to be outside its scope.

*e. Sensitive investigative information.* The identity of confidential sources, information pertaining to CID investigative techniques, and date contained in internal CID records, reports, or indices thereof will be released only as authorized by paragraph *d* above or by the Commanding General, USACIDC. All other inquiries or requests regarding this type of information, not made under the provisions of paragraph *g* below, will be forwarded to the Director, U.S. Army Crime Records Center, ATTN: CICR-FP, 2301 Chesapeake Ave, Baltimore, MD 21222–4099

*f. Juvenile records.*

(1) Investigative information pertaining to juveniles identified in a CID ROI, SSI, or criminal information report as suspects, subjects, or victims may be disclosed only as provided below. The status of "juvenile" is determined with reference to the age of the person as of the date of the offense.

*(a)* To those persons in the normal distribution channels of CID reports.

*(b)* To other law enforcement authorities when information acquired or maintained by CID indicates criminal activity which may fall within another law enforcement agency's jurisdiction or responsibility.

*(c)* To other persons as required or authorized by law (e.g., parents, pursuant to the Juvenile Justice Act, 18 U.S.C. 5033, or child welfare agencies).

(2) The fact that the individual to whom the information pertains has become an adult does not alter the protection provided juvenile records. CID reports pertaining to juvenile subjects, suspects or victims will be marked so that they are readily identifiable as juvenile records when filed with other records. This requirement also applies when automated indexing of juvenile records is utilized.

(3) Any order from a Federal or State court of competent jurisdiction directing the sealing of juvenile records or juvenile court proceedings will be attached to the file at the local level and, if appropriate, at the Crime Records Center. When it appears that the terms of a court order or statute pertaining to the sealing of juvenile records or court proceedings restrict DOD use of records remaining in the custody of the USACIDC, clarification or guidance must be obtained from the Commanding General, USACIDC, ATTN: CIJA-ZA.

(4) Requests for release of juvenile records that appear to conflict with the guidance in this regulation and proposed denials for such CID juvenile records will be forwarded promptly to the Commanding General, USACIDC, ATTN: CIJA-ZA, for determination of the USACIDC position and response.

*g. Requests for information.* Legislative or civilian judicial requests from Federal, State or foreign governments for access to or copies of CID reports or information from CID investigative efforts will be forwarded to the Commander, USACIDC, ATTN: CIJA–ZA, 5611 Columbia Pike, Falls Church, VA 22041–5015. Congressional requests will be processed in accordance with AR 1–20 and AR 340–21. Civilian judicial requests or subpoenas, including those originated by prosecution and defense counsel, will also include that information required by AR 27–40, chapter 7.

*h. Official requests.* Official requests for information from CID reports of investigation from agencies of the executive branch of the Federal Government identified as routine users in AR 340–21 and similar requests from other Department of Defense components will be referred to the Director, U.S. Army Crime Records Center, 2301 Chesapeake Ave, Baltimore, MD 21222–4099. The Director, U.S. Army Crime Records Center, is authorized direct communication with these agencies and components for this purpose.

*i. Disclosure.* Individuals, agencies, or components that receive CID investigative reports or other information may further disclose such material only for administrative, non-judicial, or judicial purposes or proceedings. No other disclosure is permitted without the prior approval of the Commanding General, USACIDC. These limitations do not apply to requesters or recipients under the Freedom of Information or Privacy Acts. (See para 4–4.)

*j. News media requests.* News media requests under AR 340–17 for CID criminal investigative information not resolved at the investigating element's level may be directed to the Commander, USACIDC, ATTN: CIIO–ZA, 5611 Columbia Pike, Falls Church, VA 22041–5015.

*k. Other requests.* All other requests not specifically addressed above for copies of CID investigative reports or information will be referred to the Director, U.S. Army Crime Records Center, ATTN: CICR–FP, 2301 Chesapeake Ave, Baltimore, MD 21222–4099.

## 4–4. Individual requests for access to or amendment of CID reports of investigation

*a. Access to CID reports.* All requests for access to CID reports made under the Privacy Act or Freedom of Information Act will be processed in accordance with AR 340–21 and AR 340–17, respectively.

*b. Amendment of CID reports.* CID reports of investigation are exempt from the amendment provisions of the Privacy Act and AR 340–21. Requests for amendment will be considered only under the provisions of this regulation. Requests to amend CID reports of investigation will be granted only if the individual submits new, relevant, and material facts that are determined to warrant revision of the report. The burden of proof to substantiate the request is upon the individual. Requests to delete a person's name from the title block will be granted if it is determined that probable cause does not exist to believe that the individual committed the offense for which titled as a subject. The decision to list a person's name in the title block of a CID report of investigation is an investigative determination that is independent of judicial, non-judicial, or administrative action taken against the individual or the results of such action. Within these parameters, the decision to make any changes in the report rests within the sole discretion of the Commanding General, USACIDC. His decision will constitute final action on behalf of the Secretary of the Army with respect to this regulation.

*c. Submission of requests.* Requests for access to or amendment of CID investigative reports will be forwarded to the Director, U.S. Army Crime Records Center, ATTN: CICR–FP, 2301 Chesapeake Ave, Baltimore, MD 21222–4099.

## Chapter 5
## Crime Records Center, USACIDC

### 5–1. General
The U.S. Army Crime Records Center will receive and maintain the permanent files of CID and selected MPI reports of investigation, selected military police reports (DA Form 3975), and commanders reports of disciplinary or administrative action taken (DA Form 4833). The Director will ensure the retention and proper use of these records and furnish data and copies of files, documents, or information thereom to persons or agencies authorized to receive such information. The Director will refer requests to agencies controlling release of the requested information. For crime records purposes, the Director will maintain liaison for the Commanding General, USACIDC, with the Defense Investigative Service, the U.S. Army

Intelligence and Security Command, Defense Central Index of Investigations (DCII), the DOD National Agency Check Center, and other Federal agencies as appropriate.

## 5–2. Functions

The Director, Crime Records Center will—

*a.* Receive and file all records and reports as directed by the Commanding General, USACIDC.

*b.* Receive and file military police reports and MPI reports acquired under the provisions of AR 190–45.

*c.* Process for filing all CID and MPI reports of investigation, other agency criminal investigation reports, and military police reports, to include reviewing of offense coding and ensuring that each report is administratively complete.

*d.* Provide emergency and routine records checks for provost marshals or security officers, USACIDC elements, DA, DOD, and other law enforcement agencies identified by the Commanding General, USACIDC, as routine users of records maintained by the Crime Records Center.

*e.* Operate and maintain criminal investigative data reference indexes.

*f.* Provide DCII with indexing data for individuals listed as subjects or victims of all CID reports of investigation and subjects of all military police reports.

*g.* Develop specialized statistics and reports pertaining to crime within the Army for the USACIDC as required by HQDA.

*h.* Transmit on request, for law enforcement purposes, copies of CID and MPI reports of investigation and MP reports to provost marshals or security officers, USACIDC elements, Department of Army and Defense officials who are authorized to obtain and use reports, and other law enforcement agencies identified by the Commanding General, USACIDC, and the DCSPER, HQDA, as routine users of CID and MP records respectively.

*i.* Implement applicable release policy and procedures as delineated in paragraphs 4–3*f, h, i,* and 5–2 *h, k,* and *l.*

*j.* Refer requests or requesters to appropriate agencies if information requested does not fall within Crime Records Center control for release action.

*k.* Receive official requests for information from CID reports of investigation from agencies of the Federal Government identified as routine users in AR 340–21 and similar requests from DOD components. The Director, Crime Records Center, is authorized direct communication with these agencies for this purpose.

*l.* Upon request, transmit copies of final CID and MPI reports of investigation and MP reports reflecting known subjects to Department of the Army and Department of Defense agencies and elements of the executive branch of the Federal Government authorized by statute, executive order, directive, or regulation to have access to law enforcement files to make determinations regarding—

(1) Suitability for access to classified national defense information.

(2) Filing of unfavorable information in official military personnel files (AR 600–37).

(3) Accreditation as provided in AR 190–13, AR 190–30, and AR 195–3.

*m.* Upon written request, transmit CID reports and MP reports to the Office of The Inspector General, HQDA, for those activities authorized in AR 20–1.

## 5–3. Routine investigative name checks

*a.* The Crime Records Center will, upon request by authorized individuals, conduct a search of available files and indexes to determine if information pertaining to a particular individual is on file. Commanders will oversee requests to assure submission in accordance with this regulation.

*b.* Name checks are made by full name, date of birth, place of birth, social security number, and former military service number. Military police, security police, and USACIDC elements requesting routine name checks must provide as much of this information as possible and may submit such requests by letter or message to the

Crime Records Center. Requests for name checks for other than law enforcement investigation purposes will state the reason for the request and the use to be made of the data. The specific statute, directive, or regulation upon which the request is based will be cited. Requests for law enforcement purposes will include, if available, the military police report (DA Form 3975) number, the Crime Records Center cross-reference number for the military police or security police, and the sequence number or report of investigation number for CID reports.

## 5–4. Immediate name checks

*a.* The Crime Records Center has facilities available to conduct expeditious checks for USACIDC elements and military police or security police for criminal justice purposes. If, during the course of a criminal investigation, the requirement arises to determine if an individual has any previous military criminal record, this may be done by using either telephone, facsimile telecopier, or electrical message. All name checks submitted by electrical message will be addressed to the DIR, USACRC, USACIDC, BALT, MD //CICR-CR//.

*b.* Requests for immediate name checks should be limited to situations where an investigative need for immediate results exists and will include, if available, the locally assigned report or sequence number.

*c.* The format to be followed in requesting name checks by telephone is at appendix F.

*d.* Telephonic name checks by appropriate officials pursuant to Freedom of Information Act (AR 340–17) and Privacy Act (AR 340–21) requests are authorized.

## 5–5. Requesting Crime Records Center files and reports

*a.* Requests for CID and MPI reports of investigation and military police reports as outlined in paragraph 4–3 and AR 190–45, will be forwarded to the Director, U.S. Army Crime Records Center, 2301 Chesapeake Ave, Baltimore, MD 21222–4099.

*b.* Requests for these reports in connection with law enforcement and investigative activities should include the following:

(1) Name of the subject, suspect, or victim of the investigation.

(2) Place and date of birth.

(3) Social security number and/or former military service number.

(4) Complete report of investigation number.

(5) If completed before 1 January 1968, the CID report of investigation and repository file numbers, if available.

*c.* Requests in connection with law enforcement or investigative activities for investigative files of the Air Force Office of Special Investigations, the Naval Investigative Service, the U.S. Army Intelligence and Security Command, Department of Defense Inspector General for Investigations, and the Defense Investigative Service may also be sent to the Crime Records Center, which will refer them to the appropriate agency.

*d.* Requests for CID and MPI reports of investigation and military police reports or information therefrom for other than law enforcement purposes will include the following:

(1) Full name of the individual.

(2) Place and date of birth.

(3) Social security number and/or former military service number.

(4) Nature and purpose of the request, including the statute, directive, or regulation governing such activity and authorizing that activity to use crime records.

*e.* DA Form 543, Requests for Records, may be used for requests and transmittal of records from the Crime Records Center.

## 5–6. Use of information contained in CID and MP reports

If a military police or criminal investigative record is used as a basis for denying any individual a right, privilege, or benefit to which that individual is entitled by Federal law or for which he would otherwise be eligible, the individual affected will normally be granted

access to the record except as provided by this regulation, AR 340–17, or AR 340–21.

# Chapter 6
# U.S. Army Criminal Investigation Laboratories

## 6–1. General
USACIDC laboratories provide forensic laboratory assistance to U.S. Army investigative elements, other DOD investigative agencies, and Federal law enforcement agencies as appropriate.

## 6–2. Responsibilities
The Commanding General, USACIDC, is responsible for policies and procedures concerning each U.S. Army Criminal Investigation Laboratory (USACIL), quality control and technical proficiency in USACIL operations, and the training of laboratory technicians.

## 6–3. Request for examination
All requests for laboratory examination will be forwarded to a USACIL in accordance with AR 195–5, unless an exception is granted by the Commanding General, USACIDC.

## 6–4. Court appearance
*a.* To the extent practicable, appearance of laboratory examiners at a legal proceeding will be requested by a message to reach the appropriate USACIL commander at least 10 working days prior to the requested appearance date. This leadtime is necessary to avoid conflicts with other commitments and allow time for administrative processing and court preparation. The message will include at a minimum—
(1) USACIL referral number (from laboratory report).
(2) Division completing the examination.
(3) Name of accused.
(4) Date, time, place, and to whom the examiner is to report.
(5) Number of days TDY required.
(6) Fund citation for travel and per diem.
*b.* The USACIL commander will have appropriate orders published. If an examiner is not available, the USACIL commander will notify the requester by return message explaining the reason for the non-availabililty of the witness, such as a conflict with another court appearance, and give the exact dates that the witness will be available.
*c.* When the presence of an examiner is desired for trial, the examiner should be requested to appear the day it is anticipated the examiner will testify, rather than the day the trial is to begin. This will assist in reducing to a minimum the examiner's absence from the laboratory.

## 6–5. On scene assistance
When particular expertise is required to process crime scenes, the presence of laboratory examiners may be requested by CID field commanders from the commander of the supporting USACIL.

## Appendix A
## References

### Section I
### Required Publications

**AR 1–20**
Legislative Liaison. (Cited in para 4–3*g*.)

**AR 1–40**
Clearance Requirements and Procedures for Official Temporary Duty Travel Outside Continental United States. (Cited in para 3–12*b*.)

**AR 10–23**
U.S. Army Criminal Investigation Command. (Cited in paras 1–5*n*, 2–1*a*, and 2–2*c*.)

**AR 20–1**
Inspector General Activities and Procedures. (Cited in paras 1–5*j*, 3–1*b*, and 5–2*m*.)

**AR 27–40**
Litigation. (Cited in para 4–3*g*.)

**AR 40–66**
Medical Record and Quality Assurance Administration. (Cited in para 3–15*b*.)

**AR 190–11**
Physical Security of Arms, Ammunition and Explosives. (Cited in paras 3–3*b*, 3–9*c*, and 3–24*a*.)

**AR 190–13**
The Army Physical Security Program. (Cited in para 5–2*l*.)

**AR 190–27**
Army Participation in the National Crime Information Center. (Cited in paras 3–17*a* and *b*.)

**AR 190–30**
Military Police Investigations. (Cited in paras 1–5*a* and 5–2*l*.)

**AR 190–38**
Detention Cells. (Cited in para 3–21*d*.)

**AR 190–45**
Records and Forms. (Cited in paras 1–5*m*, 4–2*c*, 4–3*b*, 4–3*c*, 5–2*b*, 5–5*a*, and E–2.)

**AR 190–47**
The U.S. Army Correctional System. (Cited in para 3–21*d*.)

**AR 195–5**
Evidence Procedures. (Cited in para 6–3.)

**AR 210–16**
Bachelor Housing Management. (Cited in para 3–26*b*.)

**AR 340–17**
Release of Information and Records from Army Files. (Cited in paras 4–1, 4–2*e*, 4–3*b*, 4–3*i*, 4–4*a*, 5–4*d*, and 5–6.)

**AR 340–21**
The Army Privacy Program. (Cited in paras 1–4*f*, 1–5*k*, 3–14*d*, 4–1, 4–3, 4–4, 5–2*k*, 5–4*d*, and 5–6.)

**AR 600–40**
Apprehension, Restraint, and Release to Civil Authorities. (Cited in para 3–21*a*.)

**AR 600–85**
Alcohol and Drug Abuse Prevention and Control Program. (Cited in para 3–7.)

### Section II
### Related Publications
A related publication is merely a source of additional information. The user does not have to read it to understand this regulation.

**AR 10–5**
Department of the Army

**AR27–10**
Military Justice. (This regulation includes the Memorandum of Understanding between the Department of Defense and Department of Justice.)

**AR 40–2**
Army Medical Treatment Facilities: General Administration

**AR 40–63**
Medical, Dental, and Veterinary Care

**AR 108–2**
Army Training and Audiovisual Support

**AR 190–14**
Carrying of Firearms

**AR 190–22**
Searches, Seizures, and Disposition of Property

**AR 190–28**
Use of Force by Personnel Engaged in Law Enforcement and Security Duties

**AR 195–1**
Army Criminal Investigation Program

**AR 195–3**
Acceptance and Accreditation of Criminal Investigation Personnel

**AR 195–6**
Department of Army Polygraph Activities

**AR 210–10**
Administration

**AR 310–49**
The Army Authorization Documents System (TAADS)

**AR 335–15**
Management Information Control System

**AR 340–18**
The Army Functional File System, General Provisions

**AR 380–5**
Department of Army Information Security Program

**AR 380–13**
Acquisition and Storage of Information Concerning Nonaffiliated Persons and Organizations

**AR 381–10**
U.S.Army Intelligence Activities

**AR 381–12**
Subversion and Espionage Directed Against the U.S. Army

**AR 381–20**
U.S. Army Counterintelligence (CI) Activities

**AR 600–37**
Unfavorable Information

**AR 600–50**
Standards of Conduct for Department of the Army Personnel

**AR 700–84**
Issue and Sale of Personal Clothing

**AR 740–26**
Physical Inventory Control

**FAR**
Federal Acquisition Regulation

**FRCrP**
Federal Rules of Criminal Procedure

**MCM**
Manual for Courts Martial, United States, 1984

**Section III**
**Prescribed Forms**

**DA Form 2804**
Crime Records Data Reference. (Cited in para 4–2*b* and appendix E.)

**DA Form 4833**
Commanders Report of Disciplinary or Administrative Action. (Cited in para 1–4*f*(1)(*a*) and 5–1.)

**Section IV**
**Referenced Forms**

**DD Form 543**
Request for Records

**DD Form 1056**
Authorization to Apply for a No-Fee Passport and/or Request for Visa

**DA Form 3975**
Military Police Report

# Appendix B
## Offenses within CID Investigative Responsibility

**Table B–1**

**Article of UCMJ:** 77
**Description of offense:** Principals of an offense listed in this appendix

**Article of UCMJ:** 78
**Description of offense:** Accessory after the fact to an offense listed in this appendix

**Article of UCMJ:** 80
**Description of offense:** Attempts to commit an offense listed in this appendix

**Article of UCMJ:** 81
**Description of offense:** Conspiracy to commit an offense listed in this appendix

**Article of UCMJ:** 82
**Description of offense:** Solicitation to mutiny or commit an act of sedition (see Article 94)

**Article of UCMJ:** 84
**Description of offense:** Effecting an unlawful enlistment, appointment, or separation

**Table B–1**
**—Continued**

**Article of UCMJ:** 92
**Description of offense:** Violation of a punitive lawful general order or regulation. (This pertains to those criminal offenses not covered by a specific article such as currency violations, black marketing in the aggregate amount of $1,000 or more in a 30-day period, or conflict of interest)

**Article of UCMJ:** 93
**Description of offense:** Cruelty, oppression, or maltreatment

**Article of UCMJ:** 94
**Description of offense:** Mutiny, sedition

**Article of UCMJ:** 96
**Description of offense:**
*a.* Releasing without proper authority a prisoner duly committed to his charge.
*b.* Suffering a prisoner duly committed to his charge to escape through design.

**Article of UCMJ:** 97
**Description of offense:** Unlawful detention

**Article of UCMJ:** 103
**Description of offense:**
*a.* Captured or abandoned property of a value of $1,000 or more or any property of a sensitive nature as described in appendix G, failing to secure, report and turnover, selling, or otherwise wrongfully dealing in or disposing of
*b.* Looting or pillaging

**Article of UCMJ:** 107
**Description of offense:** False official statements when in conjunction with another offense normally investigated by CID

**Article of UCMJ:** 108
**Description of offense:**
*a.* Selling or otherwise disposing of military property of the United States of an aggregate value of $1,000 or more, or any property of a sensitive nature as described in appendix G
*b.* Willfully damaging, destroying or losing, or willfully suffering to be lost, damaged, destroyed, sold, or wrongfully disposed of, military property of the United States of a value or damage of $1,000 or more

**Article of UCMJ:** 109
**Description of offense:** Wasting, spoiling, destroying, or damaging any propery other than military property of the United States of an aggregate value or damage of $1,000 or more

**Article of UCMJ:** 110
**Description of offense:** Hazarding or suffering to be hazarded any vessel of the armed forces

**Article of UCMJ:** 112a
**Description of offense:** Wrongful use, possession, manufacture, distribution, introduction, importation, exportation of controlled substances (except as provided in 3–3*a*(2)

**Article of UCMJ:** 115
**Description of offense:** Malingering involving intentional self-inflicted injury requiring hospitalization

**Article of UCMJ:** 116
**Description of offense:** Riot

**Article of UCMJ:** 118
**Description of offense:** Murder

**Article of UCMJ:** 119
**Description of offense:** Manslaughter

**Article of UCMJ:** 120
**Description of offense:** Rape or carnal knowledge

**Article of UCMJ:** 121
**Description of offense:**
*a.* Larceny or wrongful appropriation of property, including aircraft or vessels, of an aggregate value of $1,000 or more
*b.* Larceny of any motor vehicle of a value of $1,000 or more

**Table B-1
—Continued**

*c.* Larceny or wrongful appropriation of any property of a sensitive nature, as defined in appendix G
*d.* Wrongful appropriation of a motor vehicle when damage of $1,000 or more results

**Article of UCMJ:** 122
**Description of offense:** Robbery

**Article of UCMJ:** 123
**Description of offense:** Forgery

**Article of UCMJ:** 123a
**Description of offense:** Check, worthless, making, drawing, uttering, or deliving, with intent to defraud (for procurement of any article or thing of value) in the aggregate amount of $1,000 or more

**Article of UCMJ:** 124
**Description of offense:** Maiming

**Article of UCMJ:** 125
**Description of offense:** Sodomy

**Article of UCMJ:** 126
**Description of offense:**
*a.* Aggravated arson
*b.* Simple arson where property damage is of a value of $1,000 or more

**Article of UCMJ:** 127
**Description of offense:** Extortion

**Article of UCMJ:** 128
**Description of offense:**
*a.* Assault (consummated by a battery) on a child under the age of 16 years
*b.* Aggravated assault when the victim is hospitalized as a result

**Article of UCMJ:** 129
**Description of offense:** Burglary, when associated with another crime normally investigated by the USACIDC

**Article of UCMJ:** 130
**Description of offense:** Housebreaking, when associated with another crime normally investigated by CID

**Article of UCMJ:** 131
**Description of offense:** Perjury

**Article of UCMJ:** 132
**Description of offense:** Frauds against the United States when the amount involved is $500 or more.

**Article of UCMJ:** 134
**Description of offense:** Assault
*a.* Indecent
*b.* With intent to commit voluntary manslaughter, robbery, sodomy, arson, or burglary
*c.* With intent to commit murder or rape

**Article of UCMJ:** 134
**Description of offense:** Bigamy

**Article of UCMJ:** 134
**Description of offense:** Bribe or graft: accepting, asking, receiving, offering, promising, or giving

**Article of UCMJ:** 134
**Description of offense:** Burning, with intent to defraud

**Article of UCMJ:** 134
**Description of offense:** False or unauthorized military pass, permit discharge certificate, or identification card: making, altering, selling, possessing, counterfeiting, or using with intent to defraud or deceive

**Article of UCMJ:** 134
**Description of offense:** False pretenses, obtaining services under, of a value of $1,000 or more

**Article of UCMJ:** 134
**Description of offense:** Homicide, negligent

**Article of UCMJ:** 134

**Table B-1
—Continued**

**Description of offense:** Impersonating an officer, warrant officer, non-commissioned or petty officer or agent of superior authority, with intent to defraud

**Article of UCMJ:** 134
**Description of offense:** Indecent acts or liberties with a child under the age of 16

**Article of UCMJ:** 134
**Description of offense:** Indecent acts with another

**Article of UCMJ:** 134
**Description of offense:** Kidnapping

**Article of UCMJ:** 134
**Description of offense:** Mail, taking, opening, secreting, destroying, or stealing

**Article of UCMJ:** 134
**Description of offense:** Mails, depositing or causing to be deposited obscene or indecent matters in

**Article of UCMJ:** 134
**Description of offense:** Misprision of a felony

**Article of UCMJ:** 134
**Description of offense:** Obstructing justice

**Article of UCMJ:** 134
**Description of offense:** Pandering

**Article of UCMJ:** 134
**Description of offense:** Perjury, subornation of

**Article of UCMJ:** 134
**Description of offense:** Public record, wrongfully altering, concealing, removing, mutilating, obliterating, or destroying

**Article of UCMJ:** 134
**Description of offense:** Soliciting another to commit an offense listed in this appendix (other than article 94)

**Article of UCMJ:** 134
**Description of offense:** Stolen property, knowingly receiving, buying, concealing; of an aggregate value of $1,000 or more

**Article of UCMJ:** 134
**Description of offense:** Threat or hoax, bomb

## Appendix C
## Preparation of DA Report of Investigation
*(Appendix C will be published at a later date. MPI will continue to use their current forms until this appendix is published.)*

## Appendix D
*(Appendix D will be published at a later date)*

## Appendix E
## Preparation of the DA Form 2804, Crime Records Data Reference

### E-1. General
Potential investigative assistance can be negated by failure to provide complete data on DA Form 2804, Crime Records Data Reference, by misspelling names, or by listing incorrect data. Careful attention to the completion of this form is essential to its utility.

## E–2.  Requirement

A separate DA Form 2804 will be made for each of the following:

*a.* Each individual, firm, or other legal entity, listed in the title block of a report of investigation. If the individual is being deleted from the title block, the word "Deletion" will be entered in the remarks section of the form.

*b.* Each individual, firm, or other legal entity listed as a subject of DA Form 3975, Military Police Report, forwarded to the U.S. Army Crime Records Center, USACIDC, in accordance with AR 190–45.

*c.* Each individual, U.S. Government agency or organization, private firm or corporation, or other legal entity listed as a victim in the report of investigation. If the individual is being deleted as a victim, the word "Deletion" will be entered in the remarks section of the form.

*d.* Each alias or other name to include the maiden name and any present or former name of individuals for whom DA Form 2804 has been prepared in accordance with paragraphs *a*, *b*, and *c* above when different personal identifiers (date of birth (DOB) or social security number) are used. All known names and all appropriate personal identifiers will be listed in item 6, or if insufficient space is available, in the remarks section or on the reverse of the form.

*e.* When there is no change in personal identifiers, each alias or other name to include the maiden name and any present or former name will be entered in item 6, or, if there is insufficient space, in the remarks section or on the reverse side of the form. There is no requirement to prepare separate forms for each name in this situation.

## E–3.  Preparation

The items on DA Form 2804 will be completed as follows (shaded blocks will be completed by the U.S. Army Crime Records Center (USACRC)):

*a.  Item 1, Name.* Enter the last, first, and middle name of the person or name of the firm or legal entity. If deceased, enter "Deceased" immediately following the name.

*b.  Item 2, Subject Status Code.* USACRC use only.

*c.  Item 3, Grade.* The appropriate entry will be made in accordance with the following:

(1) Military personnel, list the grade of the named individual, e.g.,"E4," "W3," "O5."

(2) U.S. civilian employees of the U.S. Government, show the rating of the named individual, e.g., "GS7," "WG5."

(3) Spouses or family members, show one of the following abbreviations to reflect relationship:

*(a)* "DW" for dependent wife

*(b)* "DH" for dependent husband

*(c)* "DS" for dependent son.

*(d)* "DD" for dependent daughter.

*(e)* "DO" for other dependent.

(4) Other U.S. civilians, use the abbreviation"CIV."

(5) Foreign nationals, reflect nationality, e.g.,"GER," "KOR," "THI."

*d.  Item 4, Major Command Activity Code (MCAC).* Enter the code if applicable.

(1) See AR 310–49, appendix A, for the two-position codes used to identify major commands and subcommands.

(2) U.S. civilian employees of the U.S. Army will be coded according to the major command or activity to which their organization of employment is assigned.

(3) U.S. civilian DOD employees (employed by other than U.S. Army) will be coded "DF" (Defense Agencies).

(4) Military and civilian Army-Air Force Exchange Service (AAFES) employees will be coded "JA" (Joint Activities).

(5) Nonappropriated Fund (NAF) activity civilian employees employed by the U.S. Army will be coded according to the major command or activity responsible for operation of the installation on which employed.

(6) Foreign military personnel assigned or attached to a U.S. Army element will be coded listing the MCAC of the U.S. Army element to which assigned or attached.

(7) Spouses or family members of U.S. military personnel will be coded to reflect the MCAC of their sponsor.

(8) U.S. military personnel other than U.S. Army will be coded "DF" (Defense Agencies).

*e.  Item 5, Social Security Number (SSN).* Enter the SSN of the individual, where applicable. For foreign nationals, list passport number, identity card, or other numerical identifier, when available.

*f.  Item 6, Aliases/Nicknames.* Enter any known alias, nickname, maiden name, or other married name used by the individual named in Block 1.

*g.  Item 7, Sex.* Enter "M" for males and "F" for females.

*h.  Item 8, Race.* Enter one of the following codes:

**Table E–1**

**Code:** R
**Race:** Red
**Explanation:** American Indian—original people of North America

**Code:** M
**Race:** Yellow
**Explanation:** Asian/Mongoloid—original people of Asia, including China, Japan, and Korea.

**Code:** N
**Race:** Black
**Explanation:** Negroid or African—the black racial groups of Africa or other areas

**Code:** C
**Race:** White
**Explanation:** Caucasian—original people of Europe, North Africa, or Middle East

**Code:** X
**Race:** Other
**Explanation:** A racial identification not included above

**Code:** Z
**Race:** Unknown
**Explanation:** The racial identification is not known

*i.  Item 9, Ethnic Group.*

(1) Enter one of the following ethnic codes:

**Table E–2**

**Ethnic Code:** 6
**Race:** Mexican
**Explanation:** Persons of Mexican descent and Chicanos

**Ethnic Code:** 4
**Race:** Puerto Rican
**Explanation:** Persons of Puerto Rican descent

**Ethnic Code:** 9
**Race:** Cuban
**Explanation:** Persons of Cuban descent

**Ethnic Code:** S
**Race:** LATINAMER (Latin-American)
**Explanation:** Persons of Central and South American descent who have Spanish heritage

**Ethnic Code:** 1
**Race:** OTHHISPANIC (Other Hispanic Descent)
**Explanation:** Persons of Spanish extraction not determined as Mexican, Puerto Rican, Cuban, or Latin American

**Ethnic Code:** 8
**Race:** Aleut
**Explanation:** Persons of Aleut descent

**Ethnic Code:** 7
**Race:** Eskimo

**Table E–2
—Continued**

**Explanation:** Persons of Eskimo descent not including Aleuts

**Ethnic Code:** 2
**Race:** USCANINDIAN (U.S./Canadian Indian Tribes)
**Explanation:** Persons of U.S. or Canadian Indian tribes other than Aleut or Eskimo

**Ethnic Code:** G
**Race:** Chinese
**Explanation:** Persons of Chinese descent

**Ethnic Code:** J
**Race:** Japanese
**Explanation:** Persons of Japanese descent

**Ethnic Code:** K
**Race:** Korean
**Explanation:** Persons of Korean descent

**Ethnic Code:** D
**Race:** Indian
**Explanation:** Persons from India and their descendants

**Ethnic Code:** 5
**Race:** Filipino
**Explanation:** Persons from the Phillipine Island and their descendants

**Ethnic Code:** V
**Race:** Vietnamese
**Explanation:** Persons of Vietnamese descent

**Ethnic Code:** 3
**Race:** OTHASIAN (Other Asian Descent)
**Explanation:** Persons of Asian descent not determined separately as Chinese, Japanese, Korean, Indian, Filipino, or Vietnamese

**Ethnic Code:** E
**Race:** Melanesian
**Explanation:** Persons of Melanesian descent

**Ethnic Code:** W
**Race:** Micronesian
**Explanation:** Persons of Micronesian descent

**Ethnic Code:** L
**Race:** Polynesian
**Explanation:** Persons of Polynesian descent

**Ethnic Code:** Q
**Race:** OTHPACISLAND (Other Pacific Island Descent)
**Explanation:** Persons from the Pacific Islands and their descendants not delineated separately as Melanesian, Micronesian, or Polynesian

**Ethnic Code:** X
**Race:** Other
**Explanation:** Persons who are members of an ethnic group not listed above

**Ethnic Code:** Y
**Race:** None
**Explanation:** Persons not associated with any particular group

**Ethnic Code:** Z
**Race:** Unknown
**Explanation:** Persons whose ethnic group is unknown

(2) Persons listed in the first row below must have only one of the corresponding race and ethnic codes. No other ethnic and race combinations may be used for these persons.

**Table E–3**

**Identity:** American Indian
**Race Code:** R
**Ethnic Code:** 8, 7, 2

**Identity:** Alaskan (original people)

**Table E–3
—Continued**

**Race Code:** R
**Ethnic Code:** 8, 7, 2

**Identity:** Asian
**Race Code:** M, C, N, X, Z
**Ethnic Code:** G, J, K, 5, D, V, 3, E, W, L, Q

**Identity:** Pacific Islander
**Race Code:** M, C, N, X, Z
**Ethnic Code:** G, J, K, 5, D, V, 3, E, W, L, Q

**Identity:** Black
**Race Code:** N
**Ethnic Code:** X, Y, Z

**Identity:** White
**Race Code:** C
**Ethnic Code:** X, Y, Z

**Identity:** Hispanic
**Race Code:** C, N, X, Z
**Ethnic Code:** 6, 4, 9, S, 1

**Identity:** Other
**Race Code:** X
**Ethnic Code:** X, Y, Z

**Identity:** Unknown
**Race Code:** Z
**Ethnic Code:** X, Y, Z

*j. Item 10, Former Service Number.* Enter any previous number held by the listed individual.

*k. Item 11, Date of Birth (DOB).* Enter the named individual's date of birth using numerical designation for year, month, and day, in order; e.g., "42–06–20" for 20 June 1942.

*l. Item 12, Place of Birth (POB).* Enter the city and state of birth of the named individual. Country of birth will be entered for individuals born outside the United States.

*m. Item 13, Report of Investigation or Military Police Report Number (ROI/MPR).* All USACIDC elements will enter the ROI number, if one has been assigned. Otherwise, the CID sequence number will be entered. When an ROI number is entered, it will include the primary offense code for the case under investigation. Military police will enter the MPR number and will include the primary offense code.

*n. Item 14, Survey Code.* USACRC use only.

*o. Item 15, Other Offense Codes.* When an ROI/MPR number has been entered in item 13, offense codes other than the primary code will be entered here.

*p. Item 16, Organization and Station.* Enter the military unit and station to which the individual is assigned. If a military unit is inapplicable, enter the individual's address.

*q. Item 17, Station Code.* USACRC use only.

*r. Item 18, Date Opened.* USACRC use only.

*s. Item 19, Date Closed.* USACRC use only.

*t. Item 20, Drug Involvement.* USACRC use only.

*u. Item 21, Other Involvement.* USACRC use only.

*v. Item 22, File Location.* USACRC use only.

*w. Item 23, Suspect/Subject/Victim.* Check the appropriate box. Military police will indicate subjects only.

*x. Item 24, Disposition.* USACRC use only.

*y. Item 25, Date Reported.* Enter the date the complaint was reported to the preparing element.

*z. Item 26, Action Taken.* When item 23 reflects a check in the

"Subject" box, check the appropriate box in item 26 to indicate whether a report of action taken has been received.


# Appendix F
# Telephone Name Check Format

### F–1.   General
The U.S. Army Crime Records Center (USACRC), USACIDC, will conduct records checks on an immediate basis upon receipt of a telephonic request from an authorized user of USACRC services.

### F–2.   Immediate action request procedures
*a.* Immediate action requests may be made to USACRC on a 24-hour-a-day basis by telephoning AUTOVON 283–9222, –9223, or –9224.

*b.* Requests transmitted by facsimile will not exceed 20 names of the total number that can be listed double spaced on a single sheet of letter-size paper.

*c.* Requests transmitted orally by telephone will not exceed five names.

*d.* Search may be requested of the Criminal Records Files, the Defense Central Index for Investigation Files, or both.

*e.* The requester will be provided the results of the check of the USACRC records during the same telephone connection.

*f.* The requester will provide the following information when making a telephone name check:

(1) Requestor's name, organization, and credential or sequence number.

(2) The information required.

(3) Authorization for the receipt of the requested information. If available, military police will provide the military police report number or the USACRC cross reference number. USACIDC requesters will provide the sequence number or report of investigation number.

(4) Last name, first name, middle name or initial; date and place of birth; social security number; and service number of the person on whom the check is being requested. Omit any element not available.

### F–3.   USACRC reply
The USACRC reply will state that no record is on file or will cite the specific files available. If any USACRC files are involved, additional data pertaining to the individual(s) will be provided.

### F–4.   Recording telephone name checks
The results of all telephone name checks will be recorded for accountability and retained in the appropriate USACIDC or military police file.


# Appendix G
# Sensitive Items
The theft or suspected theft of the following will be investigated by the USACIDC without regard for monetary value.

*a.   Arms.*

(1) Handguns, Government owned.

(2) Shoulder-fired weapons, Government owned.

(3) Light automatic weapons up to and including .50 caliber machineguns.

(4) Recoiless rifles.

(5) Mortars.

(6) Rocket launchers, man portable (see (8) below).

(7) Grenade launchers, rifle and shoulder-fired.

(8) Individual operated weapons which are portable, can be fired without special mounts or firing devices, have potential use in civil disturbances, and are vulnerable to theft.

*b.   Ammunition and explosives.*

(1) Ammunition for weapons listed in paragraphs *a*(1) through (8) above, with the following exceptions:

*(a)* Cal..22 rimfire ammunition only in quantities of 10,000 rounds or more.

*(b)* Ammunition for handguns, shoulder-fired weapons and light automatic weapons up to and including .50 caliber machineguns, only in quantities of 1,000 rounds or more.

(2) Bulk explosives.

(3) Anti-tank and anti-personnel landmines.

(4) Handgrenades.

(5) Demolition charges, demolition kits, explosive kits, etc.

(6) Fuses.

(7) Detonating cord or safety fuze, 100 feet or more.

(8) Detonators, distructors, primers, firing devices, squibs, igniters; 50 or more.

(9) Boosters.

(10) Supplementary charges (not assembled to end items).

(11) Explosive bolts, explosive charges, and related items.

(12) Safety and arming devices.

(13) Incendiary destroyers.

(14) Fuel thickening compound.

(15) Riot control agent, bulk.

(16) Warheads and rocket motors.

(17) Missiles and rockets.

(18) End items of conventional and guided missile ammunition.

*c.   Narcotics and drug abuse substances.*

# Glossary

## Section I
## Abbreviations

**CID**
Criminal Investigation Division

**DOJ**
Department of Justice

**FBI**
Federal Bureau of Investigation

**IR**
Investigator's Report

**MPI**
Military Police Investigator

**NCIC**
National Crime Information Center

**ROI**
Report of Investigation

**SAC**
Special Agent-in-Charge

**SSI**
Serious or Sensitive Incident

**USACIDC**
U.S. Army Criminal Investigation Command

**USACRC**
U.S. Army Crime Records Center

**USC**
United States Code

## Section II
## Terms

**Army criminal investigation program**
Includes criminal investigation procedures, techniques, resources, training, and those CID communication procedures employed by the USACIDC throughout the Army.

**Barracks larcenies**
Larcenies occurring within the living area of a barracks environment involving the theft of personal property or U.S. Government property for which the individual soldier is responsible (e.g., TA–50 property), which theft aggregates less than $1,000. Larcenies from unit supply, arms, day or orderly rooms located within barracks buildings are not considered barracks larcenies.

**Branch office**
The smallest USACIDC operational element, normally consisting of three or less CID special agents. It provides CID support within a specified geographic area of responsibility.

**Criminal Investigation Division (CID)**
The historic term (and acronym) for matters specifically identified with USACIDC activities or organizations.

**CID special agent**
An individual (military or civilian) who has been accepted or accredited as a criminal investigator by the Commanding General, USACIDC, in accordance with AR 195–3.

**CID supervisor**
A commissioned officer, special agent, or DA civilian who has been assigned as a region, laboratory, district, or field office commander or executive officer or to other positions within the USACIDC as designated by the Commanding General, USACIDC. Also, a special agent-in-charge of a branch office or resident agency.

**Controlled substances**
Those substances defined in Article 112a, UCMJ (10 U.S.C. 912a). General catagories include, but are not limited to, narcotics, derivatives of the cannabis plant, amphetamines, barbiturates, hallucinogens, methaqualone, and phencyclidine.

**Crime prevention survey**
A formally recorded review and analysis of existing conditions within a specified facility, activity, or area for the purpose of detecting crime, identifying conditions or procedures conducive to criminal activity, and minimizing or eliminating the opportunity to commit a criminal offense or engage in criminal activity. It seeks to determine the nature, extent, and underlying causes of crime, and provides the commander with information for use in the crime prevention program.

**Criminal information**
Information compiled in an effort to anticipate, prevent, or monitor possible or potential criminal activity directed at or affecting the U.S. Army or Army personnel.

**Criminal investigation**
An investigation of a criminal incident or allegation conducted by the USACIDC or MPI.

**Criminal investigative information**
Information compiled in the course of a criminal investigation.

**Criminal justice**
Refers to the enforcement of criminal laws, including efforts to prevent, control, or reduce crime, or to identify or apprehend criminals, and to the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities.

**Criminal offense**
Any criminal act or omission as defined and prohibited by the Uniform Code of Military Justice, the U.S. Code, State and local codes, foreign law, or international law or treaty. As used herein, this term does not include military offenses as defined below. In the case of juveniles, this term refers to those acts which, if committed by an adult, would be subject to criminal sanctions.

**District**
A subordinate operating element of a CID region normally consisting of 21 or more CID special agents. It provides CID support within a specified geographic area of responsibility.

**Drug suppression team (DST)**
A team composed of CID special agents and, if appropriate, Military Police (MP) used for semi-covert employment in criminal investigations and drug suppression and drug-related criminal information collection operations at military installations.

**Economic crime (EC)**
A loss (normally a loss of property or funds, but may include nonquantifiable resources such as public confidence) to the Government (not to an individual, although individuals may be affected, e.g., through increased taxes or erosion of benefits) due to the subversion of a system (that is, the manipulation or undermining of a visible system, e.g., the finance system; or less apparent system, e.g., public confidence in elected officials; any system which serves the processes of government) by a component of that system (whether the component is permanent, e.g., a contracting officer; or temporary, e.g., an individual contractor, or firm) acting with criminal intent, (e.g., that which distinguishes "EC" from simple mismanagement, human error, or noncriminal negligence).

**Felony**
A criminal offense punishable by death or confinement for more that 1 year.

**Field office**
A subordinate operating element of a CID region normally consisting of between 10 and 20 CID special agents. It provides CID support within a specified geographic area of responsibility.

**Founded offense**
A criminal offense, the commission of which has been adequately substantiated by police investigation. The determination that a founded offense exists is made by the appropriate police agency and is not dependent upon judicial decision.

**Hospitalization**
As used in this regulation, hospitalization refers to being admitted to a medical facility for more than 24 hours for medical treatment, not for mere "observation".

**Juvenile**
For purposes of this regulation, a person under the age of 18 at the time of the offense and who was not then a military member.

**Military offense**
Any wrongful act or omission which is unique in the military context and has no correlative application in a civilian context.

**Narcotics**
Opium, opium derivatives (morphine, codeine, heroin); synthetic opiates (meperidine, methadone); the coca leaf, and its derivative, cocaine.

**Non-narcotic controlled substances**
Those substances or their immediate precursors listed in the current schedules of title 21, U.S. Code, section 812, which do not contain a narcotic, such as derivatives of the cannabis plant (marihuana), amphetamines, barbiturates, hallucinogens, methaqualone, and phencyclidine.

**Preliminary investigation**
An examination by the USACIDC of a particular situation or set of circumstances to determine if there is reason to believe that a crime may have occurred, or is about to occur, and, if so, whether the USACIDC has investigative authority and responsibility.

**Protective services**
Those measures taken to provide personal security to individuals, both domestic and foreign, as designated by higher authority.

**Region**
Regions are the major subordinate command and control elements of the USACIDC. They control CID support within an assigned geographic area.

**Report of investigation**
An official written record of all pertinent information and facts obtained in a criminal investigation.

**Resident agency**
A resident agency is normally a subordinate element of a CID field office or district. It provides CID support within a specified portion of a district's or field office's geographic area of responsibility.

**Special agent-in-charge (SAC)**
A CID special agent appointed as the supervisor of a resident agency or branch office.

**Special background investigation**
An expanded background investigation conducted by the Defense Investigative Service (DIS) to verify information concerning an individual's personal qualifications, loyalty, and suitability for assignment to a special position of trust.

**Subject**
A person about whom probable cause exists to believe that the person committed a particular criminal offense.

**Suspect**
A person about whom some credible information exists to believe that the person committed a particular criminal offense.

**Title section of CID report**
The section of a CID report where suspects, subjects, and victims are identified. This section is similar to the "Subject Block" of the Military Police Report (DA Form 3975).

**Section III**
**Special Abbreviations and Terms**
There are no special terms.

**Unclassified**

# USAPA

ELECTRONIC PUBLISHING SYSTEM
TEXT FORMATTER ... Version 2.45


PIN:          002225–000
DATE:         12-16-98
TIME:         10:27:50
PAGES SET:    23

DATA FILE:    s210.fil
DOCUMENT:     AR 195–2
DOC STATUS:   NEW PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MICHAEL S. ESCOBEDO** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No. 08-00575 (RMC)** |
| | ) |
| **THE HONORABLE PETE GEREN** | ) |
| **Secretary of the Army,** | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

**<u>ORDER</u>**

This matter comes before the Court on Defendant's Motion for Summary Judgment.

Based upon the motion, the opposition thereto, and the entire record herein, it is this _____ day of

_____, 20___ hereby

ORDERED that Defendant's motion is GRANTED, and it is further

ORDERED that judgment shall be entered for Defendant, and that this matter is

hereby DISMISSED WITH PREJUDICE.

This is a final, appealable order.

SO ORDERED.


_____
ROSEMARY M. COLLYER.
United States District Judge

Copies to:
Parties via ECF