UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHAEL S. ESCOBEDO, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 08-575 (RMC) |
| THE HONORABLE PETE GREEN, Secretary of the Army, | ) ) ) | |
| Defendant. | ) ) ) | |

MEMORANDUM OPINION

Dr. Michael S. Escobedo's request for correction of his military record arises from his claim for damage to his boat and truck, allegedly caused by a storage facility under government contract. Dr. Escobedo contended that the storage facility was responsible for the damage and he submitted a claim asking for reimbursement from the Army. The storage facility blamed Dr. Escobedo for the damage. After an investigation, the U.S. Army Criminal Investigation Command found probable cause to charge Dr. Escobedo with fraud, attempted larceny, and false official statement, and the Federal Bureau of Investigation National Criminal Information Center ("NCIC") placed his name in its records. Protesting his innocence, Dr. Escobedo applied to the Army Board for Correction of Military Records ("ABCMR"), requesting that his name and identifying information be removed from the NCIC records. ABCMR denied his request. As a result, Dr. Escobedo brought this suit against the Secretary of the Army under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), asserting that the ABCMR denial was arbitrary and capricious. Having reviewed the record carefully, the Court cannot agree and

will grant the Secretary's motion for summary judgment.

## I. FACTS

Dr. Escobedo is a former Army Captain who served in the Army Reserve starting in 1995 and then on active duty from July 1996 through January 1998. In June 1996, he attended the U.S. Army Flight Surgeon primary course at Fort Rucker, Alabama. Prior to his attendance, Lone Star Van Company ("Lone Star") packed and stored his household goods, including his boat. Lone Star was under contract with the government.

On August 23, 1996, Dr. Escobedo and his friend, Keith Young, drove to the Lone Star warehouse to retrieve the boat. Dr. Escobedo claims that he found his boat abutting a concrete wall with a bent propeller and damage to the wheel castor, pin, and taillights. Compl. ¶ 23. Dr. Escobedo further alleges that Lone Star's dock foreman, Dwight Tatum, attached the boat trailer to the ball hitch on Dr. Escobedo's truck. *Id*. ¶¶ 25-26. When Dr. Escobedo pulled forward, the trailer came off the hitch and slammed into the back of the truck, damaging the truck. *Id*. Dr. Escobedo submitted a damage claim to the Army's "3 Corps" claims office. *Id*. ¶ 29. The 3 Corps claims office indicated that it would cover the damage to the boat, but that Dr. Escobedo would have to file a claim with Lone Star's insurance company for coverage of damage to the truck. *Id*. ¶ 30; *see also* Administrative Record ("AR") at 270-72 (because the truck was not part of the shipment, Dr. Escobedo was required to seek coverage from the warehouse's insurance carrier).

Lone Star denied responsibility for damage to the boat, asserting that Lone Star employees had heard Dr. Escobedo say he had damaged the propeller on rocks in a lake but planned to make a claim so that the Army would pay for it. Compl. ¶ 31. Lone Star further

denied responsibility for damage to the truck, contending that a Lone Star employee assisted in placing the trailer on the ball hitch, but that Dr. Escobedo handled the task of locking the hitch without the assistance of any Lone Star employees.  *Id*.; *see also* AR at 194 & 272.

The Army's Criminal Investigation Division conducted an investigation and issued a Report of Investigation ("ROI"), concluding that probable cause existed to believe that Dr. Escobedo had committed fraud, attempted larceny of government funds, and false official statement with regard to the events of August 23, 1996 and his claim for damages.  *Id*. ¶ 32; *accord* AR at 169-260.  The ROI included reports of three witness interviews, all of whom asserted that Dr. Escobedo attached his boat to his truck.  *See* AR at 189, 191, 194.  Two of the three asserted that they heard Dr. Escobedo say that he previously had damaged the propeller passing over rocks in a lake and that he intended to file a claim to get the Army to pay for the damage.  *Id*. at 189 & 194.  As a result of the investigation, the Criminal Investigation Division "titled" him for the offenses, that is, the Division placed his name in the title block of a ROI.  *See* Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem."), Ex. A (DoDI 5505.7, Titling and Indexing Subjects of Criminal Investigations in the Department of Defense (Jan. 7, 2003) (Enclosure 1 ¶ E1.1.8 defining "titling")).  His name was also indexed in the Defense Clearance and Investigations Index ("DCII").  *See* DoDI 5507 ¶ 6.1 (all names of subjects of DoD criminal investigations shall be listed in the DCII).  Court martial charges were preferred against Dr. Escobedo.  Compl. ¶ 44.  On advice of counsel, Dr. Escobedo submitted a request for discharge in lieu of trial by court martial so that he could avoid the loss of his medical license.  *Id*. ¶ 45.  The Army approved the request and discharged Dr. Escobedo Under Other Than Honorable Conditions, In Lieu of Trial by Court Martial, effective January 13, 1998.  *Id*. ¶ 46.

Subsequently, Dr. Escobedo submitted an application to the Army Discharge Review Board, requesting that the discharge characterization be upgraded to Honorable. *Id.* ¶ 47. On October 21, 2005, the Review Board granted the application. *Id.* ¶ 48; *see also* AR at 63-72. The characterization of the discharge was changed to Honorable, Miscellaneous/General Reasons. AR at 70-71. The Review Board explained:

> The Board does not condone the applicant's misconduct; however, it determined that the discharge is inequitable. The applicant's misconduct was mitigated by service of sufficient length and merit to warrant an upgrade of the discharge being reviewed. Accordingly, the Board voted to grant relief in the form of an upgrade of characterization of service to fully honorable and in a change to the narrative for discharge to Miscellaneous/General Reasons.

AR at 69. On December 1, 2005, the Secretary adopted the findings of the Review Board. Compl. ¶ 50; AR at 59-62.

Dr. Escobedo submitted an application to the ABCMR,[1] requesting that his name and identifying information be removed from the ROI, in which he was titled with the larceny, false statement, and false claim offenses, and from the DCII. On March 8, 2007, ABCMR denied the request. AR at 3-9. ABCMR found that there was insufficient evidence to support Dr. Escobedo's claim that there was no probable cause to title Dr. Escobedo for the offenses for which he was charged. *Id.* at 8. Further, ABCMR explained that titling only requires credible information that an offense may have been committed and that the only way to administratively remove a titling action from the ROI and the DCII is to show either mistaken identity or a

---

[1] Pursuant to 10 U.S.C. § 1552(a)(1), the Secretary of a military department may correct a military record to correct an error or remove injustice. The ABCMR was established by the Secretary of the Army to carry out this function.

complete lack of credible evidence in support of the initial titling determination. *Id*. ABCMR concluded that Dr. Escobedo failed to meet this standard. *Id*.[2]

Dr. Escobedo filed this lawsuit, alleging that he was wrongfully titled for these offenses based on witness statements that were biased and contradictory. Compl. ¶¶ 66 & 68. Because no crime was ever proved and because the Review Board amended his discharge to Honorable (for Miscellaneous/General Reasons), Dr. Escobedo asserts that ABCMR was arbitrary and capricious in denying his request to remove his name and identifying information from the ROI and the DCII. *Id*. ¶ 68. The parties have filed cross motions for summary judgment.[3]

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party that "fails to make a showing sufficient to establish

---

[2] Dr. Escobedo also petitioned the U.S. Army Criminal Investigation Command requesting amendment of the ROI; the petition was denied. Compl. ¶¶ 51-53; AR at 10.

[3] In his Complaint, Dr. Escobedo also asserted a Fifth Amendment claim. S*ee* Compl. ¶¶ 72-78 (alleging that the ABCMR violated Dr. Escobedo's due process rights). He abandoned this claim, however, by failing to raise it in his motion for summary judgment or in response to the Secretary's motion.

the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248.  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322.  In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.

### B. Administrative Procedure Act

The APA requires a reviewing court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001).  In making this inquiry, the reviewing court must consider whether the agency's decision was based on consideration of relevant factors and whether there was a clear error of judgment. *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989).  At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *see also Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result.").  An agency action may be arbitrary or capricious if the agency (1) relied on factors which Congress did not intend it to consider; (2) entirely failed to consider an important aspect of the problem; or (3) offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could

not be ascribed to a difference in view or agency expertise. *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) ("Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action.").

As the Supreme Court has explained, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

A court must apply an unusually deferential standard when reviewing an action of the ABCMR. *Piersall v. Winter*, 435 F.3d 319, 324 (D.C. Cir. 2006). Military boards are entitled to even greater deference than civilian administrative agencies. *Labin v. Harvey*, Civ. No. 05-315, 2006 WL 949884, *5 (D.D.C. Apr. 10, 2006). Such substantial deference "is calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its areas of competence." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000). An ABCMR decision is not arbitrary and capricious if the decision "minimally contains a rational connection between the facts found and the choice made." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997).

A plaintiff must overcome a strong presumption that the military administrators discharged their duties correctly, lawfully, and in good faith. *Frizelle*, 111 F.3d at 177. To rebut

this presumption, "the plaintiff has the burden of showing 'by cogent and clearly convincing evidence' that the decision was the result of a material legal error or injustice." *Doyle v. England*, 193 F. Supp. 2d 202, 207 (D.D.C. 2002).

### III.  ANALYSIS

The National Defense Authorization Act for 2001 directed the Secretary of Defense to establish a process for expunging the name and identifying information of any individual who was subject to a criminal investigation from the official report and central index in any case in which it is determined that the entry was made contrary to Department of Defense ("DoD") requirements.  Pub. L. 106-398, 1154 Stat. 1654 § 552 (Oct. 30, 2000).  As a result, DoD revised its regulations by promulgating DoD Instruction 5505.7, which provides:  "The DoD standard that shall be applied when titling and indexing subjects of criminal investigations is a determination that credible information exists indicating that the subject committed a criminal offense."  DoDI 5505.7 ¶ 6.3.  Generally, once the subject of an investigation has been titled and indexed, even if it is later found that the individual did not commit the offense, the individual's name remains in the DCII.  *Id*. ¶ 6.6.  There are two exceptions to this rule:  Identifying information about the subject of a criminal investigation shall be removed from the title block of a report of investigation and the DCII (1) in the case of mistaken identity, *i.e.*, the wrong person's name was placed in the ROI or the DCII, or (2) "if it is later determined a mistake was made at the time the titling and/or indexing occurred in that credible information indicating that the subject committed a crime did not exist."  *Id*. ¶¶ 6.6.1 & 6.6.2

The DoD Instruction 5505.7 further provides that "[w]hen reviewing the appropriateness of a titling/indexing decision, the reviewing official shall consider the

investigative information available at the time the initial titling/indexing decision was made to determine whether the decision was made in accordance with the standard stated in paragraph 6.3," *i.e.*, the credible information standard. *Id*. ¶ 6.9. "Credible information" is defined as "information disclosed or obtained by an investigator that, considering the source and nature of the information and the totality of the circumstances, is sufficiently believable to lead a trained investigator to presume that the fact or facts in question are true." *Id*., Enclosure 1 ¶ E1.1.1.

To determine whether to remove Dr. Escobedo's name and identifying information from the ROI and the DCII, ABCMR applied the "credible information" standard set forth in DoD Instruction 5505.7 and found that there was credible evidence to title and index Dr. Escobedo for the criminal offenses. AR at 3-9. Dr. Escobedo contends that ABCMR should have applied the probable cause standard as set forth in an Army Regulation and not the credible information standard set out in DoD Instruction 5505.7. Army Regulation 195-2 provides:

> [Criminal Investigation Division "CID"] reports of investigation are exempt from the amendment provisions of the Privacy Act . . . . Request for amendment will be considered only under the provisions of this regulation. Requests to amend CID reports of investigation will be granted only if the individual submits new, relevant, and material facts that are determined to warrant revision of the report. The burden of proof to substantiate the request is upon the individual. Requests to delete a person's name from the title block will be granted if it is determined that probable cause does not exist to believe that the individual committed the offense for which titled as a subject.

Def.'s Mem., Ex. C Army Reg. 195-2 ¶ 4-4 (effective Oct. 30, 1985).

DoD Instruction 5505.7 was promulgated on January 3, 2003; it supercedes Army Regulation 195-2, effective October 30, 1985. When a service regulation conflicts with a

Department of Defense regulation, the service regulation must give way. *Casey v. United States*, 8 Cl. Ct. 234, 239 (Fed. Cl. 1985); *see also Simmons v. Brown*, 497 F. Supp. 173, 178 (D. Md. 1980) (regulations of the branches of service must be in accord with DoD regulations); *cf. Holz v. Westphal*, 217 F. Supp. 2d 50, 52-53 (D.D.C. 2002) (recognizing, but not resolving, the conflict between DoD's credible information standard and Army's probable cause standard).[4] Thus, the ABCMR properly applied the credible information standard under DoD Instruction 5505.7.

Dr. Escobedo further complains that the ABCMR acted arbitrarily by failing to consider the fact that the Review Board found that his discharge was inequitable and amended its characterization to "Honorable." But the ABCMR did examine the Review Board's findings. In doing so, it noted that the Review Board agreed to modify Dr. Escobedo's discharge based on length and merit of service, expressly stating that it did "not condone [Dr. Escobedo's] misconduct." AR at 8. As a result, the ABCMR properly determined that the Review Board's findings provided insufficient support for the relief Dr. Escobedo requested. *Id*.

Also, Dr. Escobedo argues that the ABCMR failed to explain its decision adequately, summarily finding that he had failed to demonstrate a complete lack of credible evidence. This is not the case. ABCMR rendered a decision that explained the credible information standard, indicated that it had reviewed the ROI and witness testimony, and noted that Dr. Escobedo had not shown a complete lack of credible evidence to support the titling decision. AR at 3-9. The ABCMR decision is not arbitrary and capricious as it "contains a rational connection between the facts found and the choice made." *Frizelle*, 111 F.3d at 176.

---

[4] Dr. Escobedo further proposes that DoD regulations provide a due process standard that is a "floor" and that the Army may adopt regulations providing additional due process protections. Dr. Escobedo cites no support for this proposition.

Finally, Dr. Escobedo asserts that the ABCMR erred by failing to consider evidence consisting of contradictory testimony, the alleged bias of Lone Star employees, and an initial inventory form showing that the boat's propeller was "dented" when it was initially stored, and thus not "bent." None of the evidence that Dr. Escobedo points to demonstrates that a "mistake was made at the time the titling and/or indexing occurred in that credible information indicating that the subject committed a crime did not exist." DoDI 5507.5 ¶¶ 6.6.1 & 6.6.2. There was credible information supporting the decision to title Dr. Escobedo for the offenses, information that, "considering the source and nature of the information and the totality of the circumstances, [was] sufficiently believable to lead a trained investigator to presume that the fact or facts in question [were] true." *Id.*, Enclosure 1 ¶ E1.1.1. The three witness interviews included in the ROI all indicated that Dr. Escobedo himself attached his boat to his truck. *See* AR at 189, 191, 194. Two of the three witnesses asserted that they had heard Dr. Escobedo say that he previously had damaged the propeller passing over rocks in a lake and that he intended to file a claim to get the Army to pay for the damage. *Id*. at 189 & 194. One witness testified that the intake inventory form stated that the propeller was "dented," and that this could well have meant the same thing as "bent." AR at 275. The investigating officer considered all the evidence in making the charging recommendation, including the statement of one witness who reported that most storage facilities deny responsibility even when they do damage property. *Id*. at 272. Dr. Escobedo has not shown by cogent and clear evidence that the ABCMR decision was a result of material legal error or injustice. *See Doyle*, 193 F. Supp. 2d at 207. He has not overcome the strong presumption that the ABCMR discharged its duties correctly, lawfully, and in good faith. *Frizelle*, 111 F.3d at 177.

## IV.  CONCLUSION

This Court cannot substitute its judgment for that of the ABCMR.  Because the ABCMR decision was properly based on the credible information standard and the ABCMR provided a reasoned explanation of its decision, based on some credible evidence, the Secretary's Motion for Summary Judgment [Dkt. # 6] will be granted and Plaintiff's Motion for Summary Judgment [Dkt. # 9] will be denied.  A memorializing order accompanies this Memorandum Opinion.


Date: March 19, 2009                              /s/
                                       ROSEMARY M. COLLYER
                                       United States District Judge